[Civ. No. 12065. Third Dist. Apr. 17, 1970.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Appellant, v. PAUL MORSE et al., Defendants and Respondents.

708

**COUNSEL**

Bledsoe, Smith, Cathcart, Johnson & Rogers, Richard H. Petersen, Richard A. Raftery, Noel Kelly, R. S. Cathcart and Robert Seligson for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Ernest Arnold, P. Beach Kuhl, Partridge, O'Connell & Partridge, Gilbert B. Kirwin, Chickering & Gregory, John Philip Coghlan, Marvin M. Grove and David R. Pigott for Defendants and Respondents.

**OPINION**

**FRIEDMAN, Acting P. J.**—In 1964 Bacoccini and Morse were co-employees of the Flintkote Company. Morse was operating a crane near a Pacific Gas and Electric Company power line. The crane boom contacted the power line, causing Bacoccini electrical shock and severe injuries. He sued Pacific Gas and Electric Company for damages and the latter settled for $450,000. In the present action Pacific Gas and Electric Company sues Morse, the coemployee, alleging that he was actively negligent; alleging that Pacific Gas and Electric was at most passively negligent; seeking a money judgment on the theory of equitable indemnification. In a second count Pacific Gas and Electric Company seeks a declaration establishing the liability of American Mutual Liability Insurance Company, on the theory that Morse became an additional insured on the public liability policy which American Mutual had issued to Flintkote, Morse's employer. The trial court sustained general demurrers with leave to amend. Pacific Gas and Electric elected to stand on its complaint and now appeals from the judgment of dismissal.

The appeal revolves around several provisions of the Workmen's Compensation Law. One of these provisions (Lab. Code, § 3852) states that an employee's claim for compensation does not affect his right of action against any person other than the employer. Thus, prior to 1959, an injured workman could seek compensation from his employer and also bring a common law damage suit against a coemployee whose negligence had caused the injury. (See *Saala* v. *McFarland* (1965) 63 Cal.2d 124, 127 [45 Cal.Rptr. 144, 403 P.2d 400]; *Singleton* v. *Bonnesen* (1955) 131 Cal.App.2d 327, 329 [280 P.2d 481].) He could also sue a third party tortfeasor. The latter, having paid damages to the injured workman, could pursue a claim for equitable or implied indemnity against the workman's negligent employer. (See, e.g., *Aerojet General Corp.* v. *D. Zelinsky & Sons* (1967) 249 Cal.App.2d 604 [57 Cal.Rptr. 701]; *San Francisco Uni-*

*fied School Dist.* v. *California Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785].) Such a suit rested upon the assumption that the indemnity claimant had paid damages for which he was legally liable, that is, that he had committed a wrong. (*Aerojet General Corp.* v. *D. Zelinsky & Son, supra,* 249 Cal.App.2d at p. 609.) It was premised upon the claim that the indemnitor-employer was guilty of a more active wrong. (*Ibid.,* p. 610.)

The 1959 legislature adopted two separate bills affecting this state of affairs. The first of these (ch. 955) added section 3864 to the Labor Code. ▮ In effect, section 3864 restricts the employer's liability to reimburse a third party tortfeasor to actions based upon an express indemnity contract, thus eliminating the employer's liability for implied indemnification.[1] ▮ The second (ch. 1189) amended Labor Code section 3601 to limit a fellow employee's liability for ordinary negligence within the scope of employment.[2]

The trial court sustained defendants' demurrers on the ground that these two statutes precluded plaintiff's indemnification action against Morse, the injured workman's coemployee, and against American Liability Insurance Company, the public liability insurer of the two workmen's common employer.

▮ On the face of the complaint, Morse is charged with ordinary negligence in the course of his employment as Flintkote's crane operator.

[1] Labor Code, section 3864, provides: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury."

[2] Labor Code section 3601 provides in pertinent part: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee.

"(2) When the injury or death is proximately caused by the intoxication of such other employee.

"(3) When the injury or death is proximately caused by an act of such other employee which evinces a reckless disregard for the safety of the employee injured, and a calculated and conscious willingness to permit injury or death to such employee.
". . . . . . . . . . . . .

"(c) In no event, either by legal action or by agreement whether entered into by such other employee or on his behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by such other employee under subsections (1), (2), or (3) of subdivision (a) of this section. . ."

Under those facts section 3601 freed Morse from any liability to Bacoccini, his coemployee. (*Saala* v. *McFarland, supra,* 63 Cal.2d 124; *San Francisco Examiner Division* v. *Sweat* (1967) 248 Cal.App.2d 493 [56 Cal.Rptr. 711]; *Breceda* v. *Gamsby* (1968) 267 Cal.App.2d 167, 173 [72 Cal.Rptr. 832].) Plaintiff relies upon a literal and close reading of sections 3601 and 3864, urging that its lawsuit escapes the former because it is not Morse's coemployee; that it avoids the latter because it seeks no indemnity from the injured person's employer. Defendants, on the other hand, charge that plaintiff's double-barreled lawsuit circumvents the objectives of the two statutes.

Essentially, these contentions pose a problem of statutory interpretation. Plaintiff cites the traditional "plain meaning" rule, which precludes judicial interpretation of a statute free from ambiguity. ■ Literal construction will not prevail if it is opposed to legislative objective. (*Farnsworth* v. *Nevada-Cal Management* (1961) 188 Cal.App.2d 382 [10 Cal.Rptr. 531]; see also, *Redevelopment Agency* v. *Malaki* (1963) 216 Cal.App.2d 480, 487-488 [31 Cal.Rptr. 92]; cf. *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641].) In construing one of the very statutes confronting us here, Labor Code section 3864, the Supreme Court has placed it against the background of the judicial decisions preceding its 1959 enactment. Moreover, the court has applied the presumption that the enactment was intended to change the law. (*Saala* v. *McFarland, supra,* 63 Cal.2d at p. 128.)

Plaintiff assumes that the word "employer" in section 3864 refers only to one person in the indemnification cycle. ■ In the workmen's compensation law's subrogation provision, of which section 3864 is part, the term "employer" includes the employer's workmen's compensation carrier. (Lab. Code, §§ 3211, 3850). ■ As we shall see, section 3864 was designed to affect the liability of the employer's public liability carrier rather than the workmen's compensation carrier. The liability of the former is usually derivative, depending upon the existence of a judgment against its policyholder, in this case the employer. (*Rupley* v. *Huntsman* (1958) 159 Cal.App.2d 307, 312 [324 P.2d 19].) When section 3864 is construed in the light of its objective, its reference to the policyholding employer is sufficiently broad to bar the derivative liability of the employer's public liability carrier.

Under pre-1959 law the payment of tort damages by a negligent third party could generate a cycle of indemnification at the ultimate expense of the employer or his public liability insurer. In a pre-1959 indemnification action the following rules applied: "[W]hen a person is entitled to indemnity against a negligent employer, the employer cannot recover

reimbursement for compensation payments made to an injured employee either by asserting a lien against a judgment recovered by the employee or by bringing an action directly against the third party. . . . Since, however, the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received." (*Witt* v. *Jackson* (1961) 57 Cal.2d 57, 73 [17 Cal.Rptr. 369, 366 P.2d 641]; cf. *De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 223-225 [70 Cal.Rptr. 550, 444 P.2d 342].) Because the wrongdoing third party sought indemnity for net damages after subtraction of the injured employee's compensation payments and because the wrongdoing employer could not recoup the workmen's compensation award, the dual hazard's ultimate cost was split between the employer's workmen's compensation carrier and (as the case might be) the employer or his public liability insurer. Since the employer had to pay or be insured against both kinds of hazard, the pre-1959 decisions imposed a dual insurance cost upon industry. In economic terms, this cost was substantially greater than that contemplated by the workmen's compensation law.

■ As we have observed, section 3864 eliminated the employer's liability for equitable or implied indemnification of a third party tortfeasor. It had, then, the economic objective of reducing enterprise's insurance costs to the level contemplated by the workmen's compensation law, eliminating the cost of public liability insurance against implied indemnification for injury to the policyholder's own employees. Although the Legislature spoke in terms of the employer's freedom from liability, its real concern was enterprise's cost of insuring against the liability.

Whether the nominal defendant is the employer or his employee, the actual target of indemnification in the present lawsuit is the employer's liability carrier. The legislative objective should not be defeated by the choice of one conduit rather than another as a means of getting at the insurer. ■ In view of the objective of section 3864, the term "employer" is broad enough to exempt the employer's public liability carrier from the indemnification claim. Thus plaintiff has no potential recovery against American Mutual Liability Insurance Company.

Plaintiff's view of section 3601 places it in similar isolation from its statutory and historic context. Section 3601 complements section 3600, which states in part: "Liability for the compensation provided by this division, *in lieu of any other liability whatsoever to any person* . . . shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment . . . ." (Italics added.)

■ In the most explicit terms, section 3600 declares the exclusive

character of the employer's workmen's compensation liability in lieu of any *other* liability to *any* person. ▉ Sections 3600 and 3601 form a complementary, unmistakable declaration of legislative policy that the cost of industrial injury, at the scale fixed by the compensation law, shall be borne by the employing enterprise. If non-enterprise fault has contributed to the injury, section 3852 assures the injured workman a remedy which will provide the common law scale of damages. In *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 454 [70 Cal.Rptr. 710], this court stated: "Essentially, sections 3600 and 3601 are substantive declarations, fixing the employee's claim to those benefits declared by the compensation law and foreclosing entitlement to the damages traditionally available through the courts of law."

The pre-1959 indemnification cycle clashed with the policy objectives of sections 3600 and 3601. The injured employee could recover common law damages from a negligent third party, who in turn might recover indemnification from the employer or a negligent fellow worker and ultimately from the employer's public liability carrier. Having paid workmen's compensation to an employee injured by the negligence of his coemployee, the employer or his compensation insurer could then bring a subrogation action against the coemployee. (See *Vellis* v. *Albertson* (1968) 267 Cal.2d 285, 291 [72 Cal.Rptr. 841].) This situation subjected workmen to the potential of great financial liability for on-the-job negligence. It also augmented industry's insurance costs. As observed in *Saala* v. *McFarland, supra,* 63 Cal.2d at page 128: "Such liability [of a fellow employee] could be passed on to the employer's general insurance carrier, a result directly contrary to sections 3600 and 3601."

By eliminating the fellow employee's liability for on-the-job negligence, the 1959 Legislature would achieve a two-fold objective. First, it would confine the cost of most "fellow servant" injuries to industry. (See 17 Hastings L. J. 165, 177 (1965).) Second, it would confine industry's cost to the level established by the workmen's compensation scale of awards and fix a commensurate level of insurance expense.

The amendment of section 3601 thus supplemented, in part, the objectives sought by section 3684. This supplementation is particularly apparent in subdivision (c) of section 3601 (fn. 2, *supra*), which protects the employer from common law liability when one employee is liable to another for culpability beyond the range of mere negligence. It is also evident in the clause which confines the coemployee's exemption to occasions when he is acting within the scope of his employment. (See, e.g., *Saala* v. *McFarland, supra; McIvor* v. *Savage* (1963) 220 Cal.App.2d 128 [33 Cal.Rptr.

740].) This feature too protects the employing industry against vicarious liability at a scale exceeding the workmen's compensation award.

Section 3601, in turn, was complementary to section 3600. In their pre-1959 form these two sections had expressed the employer's substantive exemption from general tort liability "to any person." The amendment of section 3601 was designed to give employees equal exemption from common law tort liability within the range of on-the-job negligence.

When section 3601 is construed with section 3600, the coemployee's exemption bars the claim of the injured worker and also the claim of one seeking indemnity for damages paid the injured worker. Plaintiff is in the latter category and has no right of indemnification against Morse for ordinary negligence within the scope of the latter's employment.

Judgment affirmed.

Regan, J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 10, 1970. Tobriner, J., did not participate therein.