[Sac. No. 7934. In Bank. Dec. 19, 1972.]

COUNTY OF SACRAMENTO, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
JANE POWERS FEDERER et al., Real Parties in Interest.

## Counsel

Fitzwilliam, Memering, Stumbos & DeMers and Donald S. Walter for Petitioner.

Evelle J. Younger, Attorney General, James E. Sabine, Assistant Attorney General, Lloyd Hinkelman and Thomas K. McGuire, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Colley & McGhee and Nathaniel S. Colley for Real Party in Interest.

## Opinion

**McCOMB, J.**—Petitioner seeks a writ of prohibition restraining respondent court from proceeding in a wrongful death action filed by real parties in interest against petitioner.

*Facts:* Real parties in interest allege in their complaint that they are the heirs of Kenneth Jack Federer, who was shot and killed by prisoners in

the process of a burglary of the Federer home following their escape from a jail owned and maintained by petitioner. They allege that petitioner was negligent in classifying, supervising, and detaining the prisoners, resulting in their escape, and in failing to pursue the escaped prisoners and warn local residents of their escape. Petitioner demurred to the complaint on the ground that section 845.8, subdivision (b), of the Government Code[1] provides an immunity to public entities for injury caused by an escaped prisoner; but respondent court overruled the demurrer.

*Questions:* First. *Is prohibition an appropriate remedy?*

*Yes.* ■ Prohibition is an appropriate remedy where, as here, it is desirable that an important jurisdictional question presented by the defense of sovereign immunity from suit should be speedily determined. (*People* v. *Superior Court,* 29 Cal.2d 754, 756 [1] [178 P.2d 1, 40 A.L.R.2d 919]; *County of Santa Barbara* v. *Superior Court,* 15 Cal.App.3d 751, 754-755 (1, 2) [93 Cal.Rptr. 406] (hg. den.).)

Second. ■ *Does section 845.8, subdivision (b), of the Government Code extend immunity to a governmental entity and its employees with respect to both ministerial and discretionary acts of the employees for injury caused by an escaped prisoner?*

*Yes.* Real parties in interest acknowledge that there is immunity with respect to discretionary acts (§ 820.2), but they contend that there is no immunity with respect to ministerial acts and that the alleged acts of petitioner's employees in leaving the jail doors unlocked were ministerial in nature. A study of the history of the California Tort Claims Act (Stats. 1963, ch. 1681, p. 3266), however, shows no intention by the Legislature to provide liability for ministerial acts and immunity only for discretionary acts.

Section 815, subdivision (a), specifically provides: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." The legislative committee comment following that section reads, in part: "This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute . . . is found declaring them to be liable." In subsequent sections dealing with functions peculiarly "governmental" in nature, such as police protection, fire protection, tax

---

[1] All references not otherwise designated are to the Government Code.

administration, and mental hospital administration, liability or immunity has been provided for; and no pattern appears showing immunity only for discretionary acts or omissions.

As originally enacted, section 845.8 read, in part: "Neither a public entity nor a public employee is liable for . . . . (b) Any injury caused by an escaping or escaped prisoner." In 1970, the section was amended to extend the immunity to injury caused by an escaping or escaped arrested person or by a person resisting arrest.[2]

The immunity granted in section 845.8, subdivision (b), is absolute in terms and must be given effect "unless it clearly appears that the language used is contrary to what, beyond question, was the intent of the Legislature." (*Breshears* v. *Indiana Lumbermens Mut. Ins. Co.*, 256 Cal.App.2d 245, 250 [63 Cal.Rptr. 879].)

Section 856.2 originally provided: "Neither a public entity nor a public employee is liable for an injury caused by an escaping or escaped person who has been committed for mental illness or addiction." Significantly, in 1970 in the same act in which section 845.8, subdivision (b), was amended to extend its terms to escaping or escaped arrested persons and persons resisting arrest, section 856.2 was amended to exclude immunity from liability for injuries caused by, or to, escaping or escaped mental patients where a public employee has acted, or failed to act, out of fraud, corruption, or malice, or where injury to a patient in recapturing him results from a negligent act or omission of a public employee; but no qualification of the immunity regarding escaping or escaped prisoners was enacted. Numerous other related sections amended at the same time likewise provide for certain exclusions of immunity with respect to ministerial acts or omissions,[3]

[2]The amendment was undoubtedly enacted in response to the question raised in *Ne Casek* v. *City of Los Angeles,* 233 Cal.App.2d 131 [43 Cal.Rptr. 294] (hg. den.).

[3]For example, under section 844.6 public entities are granted immunity, with certain specified exceptions, for injuries caused by a prisoner or injuries to a prisoner; but the section expressly provides that public employees are not exonerated from liability for an injury caused by their negligent or wrongful acts or omissions.

Likewise, section 845.6 provides both public entities and employees immunity where they fail to furnish or obtain medical care for a prisoner, other than when the prisoner is in need of immediate medical care, but further states that when care is provided, a public employee is not exonerated from liability for medical malpractice. Section 854.8, relating to liability for injuries caused by, or injuries to, mental patients, contains a similar distinction.

Section 856, relating to the confinement of persons for mental illness or addiction, provides immunity for the determination (1) whether to confine a person for the afflictions, (2) what terms and conditions should be imposed with respect to any confinement, and (3) whether to parole, allow on leave, or release a person from such confinement; and it specifies that there is no liability for carrying out with due care such determinations, but that a public employee is not entitled to immunity for his

and it must be assumed that if the Legislature had intended that there be any such exclusion of immunity with respect to section 845.8, subdivision (b), it would have so provided. Under the circumstances, it is apparent that the Legislature intended the clear, unambiguous exclusion provided for in section 845.8, subdivision (b), to be an absolute exclusion.

In *Ne Casek* v. *City of Los Angeles, supra,* 233 Cal.App.2d 131, which involved the question of the liability of a public entity for injury caused by an arrested person in making an escape, the Court of Appeal, while not basing its decision on section 845.8, subdivision (b), because of doubt as to whether an arrested person was a "prisoner," examined the legislative history of the section for guidance on the question of whether ministerial negligence in arresting a person, or restraining him after arrest, would create liability, and aptly stated at pages 137-138: "Our discussion up to this point has assumed negligence in the decision of the arresting officer to use or not to use a particular force or restraint. While it seems clear from the complaint before us that the gravamen of the charge of negligence against the officers is their failure to keep the two suspects under actual physical restraint, it is perhaps within the ambit of plaintiff's allegations that the reason why they escaped was not a deliberate decision on the part of the officers not to use a particular physical restraint, but that whatever restraint they did decide to use was clumsily applied. While the negligent execution of a course of conduct previously decided on is certainly more 'ministerial' than the primary decision to engage in such conduct, we do not believe that the public policy which, we think, demands that the choice of method of keeping an arrest effective be subject to immunity, would be furthered by drawing so subtle a distinction. If zeal in making arrests is worthy of being encouraged by not making the deliberate choice of using minimal force subject to review by a judge or jury, this goal would be effectively frustrated by making the manner of executing the course chosen subject to judicial scrutiny in a civil suit for damages such as this one. We accomplish nothing by fanning the officer's ardor one moment and extinguishing it the next.

"It may be worth mentioning in this connection that a similar distinction between choice of plan and execution thereof was urged on the California Law Revision Commission by its distinguished consultant, Professor Van Alstyne, and rejected. In his brilliant 'Study Relating to Sovereign Immunity' (5 Cal. Law Revision Commission 1, 430-432) he discusses the case

---

negligent or wrongful act or omission in carrying out, or failing to carry out, those determinations.

Sections 855.4 and 855.8, which have not been amended, are examples of other sections making the immunity inapplicable in certain instances where public employees have been negligent with respect to ministerial duties.

of *Williams* v. *State,* 308 N.Y. 548 [127 N.E.2d 545]. In that case it was held that the state was not liable for intentional injury done by a prisoner who had escaped from a minimum security prison. The injury was inflicted for the purpose of making the prisoner's escape good. Professor Van Alstyne urged upon the Law Revision Commission a distinction between the discretionary decision to incarcerate a particular prisoner in a minimum security facility and negligence in the administration of the minimum security correctional program. His suggestion was not accepted by the Commission, nor by our Legislature."

In *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], this court held that acts or omissions during a continuing relationship of the public entity with the plaintiff following a determination to place in her home for foster care a youth previously committed to the Youth Authority were not encompassed within the immunity of section 845.8, subdivision (a), but had to meet the discretionary immunity requirements of section 820.2 if immunity were to be found. Section 845.8, subdivision (a), however, by its terms is limited to an injury "resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." Section 845.8, subdivision (b), on the other hand, is not limited to specific determinations or acts by public employees following which there may be a continuing relationship between the public entity and the plaintiff. Rather, it relates simply to "Any injury caused by . . . [a]n escaping or escaped prisoner."[4]

---

[4]In *County of Santa Barbara* v. *Superior Court, supra,* 15 Cal.App.3d 751 (hg. den.), which, like *Johnson,* involves section 845.8, subdivision (a), a prisoner was charged with drunk driving and released on bail. He was subsequently rearrested for attempted burglary, assault with intent to commit rape, battery, and public intoxication. While in jail, he exhibited a highly disturbed mental and emotional condition and engaged in destructive, violent, and abusive acts. He was nevertheless again released on bail, after which the sheriff notified the district attorney of the further offenses committed by the prisoner in jail. By the time he was picked up again, he had entered a residence to burglarize it and had stabbed one of the occupants to death.

The Court of Appeal, after reviewing generally the provisions of the Government Code relating to the liability of public entities and public employees, held that the county was entitled to immunity under sections 845.8 and 846. The latter section provides: "Neither a public entity nor a public employee is liabile for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."

It apparently was the contention of the petitioners (real parties in interest) in that matter that although adoption of the bail schedule under which the prisoner had been released involved a basic policy decision and hence resulted in immunity, the acts of the county employees charged with the day-to-day operation of the bail system were ministerial in character, and the county was therefore not entitled to immunity with respect thereto. The Court of Appeal, however, properly concluded that the acts of the employees were "inherently a part of the processes involved in determining whether to release and do not involve any conduct subsequent to that determination." (P. 756.)

In their complaint, real parties in interest allege, among other things, that "the regulations and law required each of said persons [the prisoners who later escaped] to at all times be subject to prior classification and under guard, control, restraint and supervision of jail personnel, and that all doors, windows, gates and bars or other devices, and all fences be so constructed, maintained, guarded and controlled so as to prevent escape by inmates." They further allege, in effect, that petitioner failed to enforce said laws and that their decedent's death occurred as a proximate result thereof. Section 818.2, however, provides that a public entity is not liable for an injury caused by adopting, or failing to adopt, an enactment "or by failing to enforce any law." (See also § 821.) "[A]ny law" would include the regulations referred to. (§ § 810.6, 811.)

Real parties in interest further allege in their complaint that petitioner failed to lock or secure the doors to the jail and that "the failure to lock or secure the doors and fences of said property constituted a dangerous and defective condition thereof," as a proximate result of which the inmates were able to escape, and their decedent was killed. ■ As pointed out by real parties in interest, section 835 provides that a public entity is liable for injuries proximately caused by a dangerous condition of its property. It is questionable that the condition of property becomes dangerous by reason of unlocked doors; but, in any event, the liability of a public entity for injury caused by an escaping or escaped prisoner is covered by section 845.8, subdivision (b), and the latter, being a specific provision, controls over the general provision. (*Rose* v. *State of California*, 19 Cal.2d 713, 724 [123 P.2d 505].)

As hereinabove indicated, real parties in interest, although recognizing that there is immunity for discretionary acts of petitioner's employees (§ 820.2), contend that there is no immunity with respect to ministerial acts and that the alleged acts of petitioner's employees in leaving the jail doors unlocked were ministerial in nature. Ministerial implementation of correctional programs, however, can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs. (Cf. *Ne Casek* v. *City of Los Angeles, supra,* 233 Cal.App.2d 131.) In any event, the Legislature's determination to make the immunity with respect to injury caused by an escaped prisoner an absolute one, thus encompassing both discretionary acts or omissions and ministerial acts or omissions, seems entirely justified when one reflects that prison administrators would of necessity be inhibited in maintaining rehabilitative programs allowing liberal prisoner freedom if the result is to increase greatly the risk of escape, and the entity is to be held responsible to third persons for injuries caused by the escaped prisoner.

Let a peremptory writ of prohibition issue, and respondent court is directed to vacate its order overruling the demurrer, to sustain the demurrer, and to proceed in a manner consistent with the views expressed herein.

Wright, C. J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**TOBRINER, J.**—I dissent. As the majority opinion states, "real parties in interest, although recognizing that there is immunity for discretionary acts of petitioner's employees ([Gov. Code, ] § 820.2), contend that there is no immunity with respect to ministerial acts and that the alleged acts of petitioner's employees in leaving the jail doors unlocked were ministerial in nature." (Majority opn., *ante*, p. 485.) The majority insist that the cloak of absolute immunity saves the state from any liability for the negligence of its employees in leaving open the doors to the jail.

The majority rely upon Government Code section 845.8 providing that "Neither a public entity nor a public employee is liable for . . . (b) any injury caused by an escaping or escaped prisoner." The majority state "[I]t must be assumed that if the Legislature had intended that there be any such exclusion of immunity with respect to section 845.8, subdivision (b), it would have so provided." (Majority opn., *ante*, p. 483.) Hence, the majority assume that the section confers an absolute immunity and does not distinguish between ministerial and discretionary acts. Such assumption as to legislative intent, however, must collapse in the face of a substantial showing of such intent.

Section 845.8 was proposed and drafted by the California Law Revision Commission. The commission accompanied its proposal with a commentary which states that "[t]his section is a specific application of the *discretionary immunity* recognized in California cases and in Section 820.2." (Italics added.) The Legislature enacted section 845.8 as proposed by the commission without any amendment. Under these circumstances, the commission's interpretation of the statute is entitled to substantial weight in construing the enactment. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].) The majority opinion, however, departs from that principle; far from giving substantial weight to the law revision commission's comments, the majority fail even to mention that report.

I believe the issue in this case was correctly analyzed and resolved in the opinion of Presiding Justice Richardson prepared for the Court of Appeal, Third Appellate District. I quote the relevant portion of that opinion:

"The important issue herein presented is whether the immunity conferred by the statute in question is absolute or discretionary. Such a determination is controlling. If the immunity is found to be absolute in its effect, the case is at an end and the writ must issue. If the case falls within the discretionary immunity rule, then it must proceed and the parties put to their proof.

"Government Code section 845.8, subdivision (b) (1), provides: 'Neither a public entity nor a public employee is liable for: . . . (b) Any injury caused by: (1) An escaping or escaped prisoner.' The discretionary immunity rule, on the other hand, is codified in section 820.2 of the Government Code in the following language: 'Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.'

"The contentions of the two parties herein are, as to petitioner, that section 845.8 is clear, unambiguous, requires only a simple reading, and confers an absolute immunity, and as to respondent, that the statute must be reviewed in its context, in the light of its legislative history, the matrix of decisional changes in governmental immunity generally, the interpretations of the authors and commentators, and that a discretionary immunity only is afforded defendant.

"What is the statutory objective? Is it in a literal interpretation of a statute apparently so unmistakable in its import, or must we probe deeper into the area of legislative intent, design and purpose? An important question of statutory interpretation is involved.

"The search for the solution to the problem posed herein must begin with a consideration of the California Tort Claims Act of 1963. (Gov. Code, § 814 et seq.) The adoption of this act represents a legislative response to *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], and *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]. Prior to *Muskopf* and *Lipman* a judicial trend toward broader liability and narrower immunity of public entities was discernible, the most significant step in that direction being *People* v. *Superior Court* (1947) 29 Cal.2d 754 [178 P.2d 1, 40 A.L.R.2d 919]. (A brief and excellent review of pre-*Muskopf* decisional history is contained in Cal. Government Tort Liability (Cont. Ed. Bar 1964) p. 6.)

"In 1963 with the adoption of the California Tort Claims Act (Gov. Code, §§ 810-996.6) the Legislature instituted a broad and comprehensive

codification of state law pertaining to governmental tort liability. Both before and after the adoption of the act it was recognized that the freedom from liability conferred by an absolute immunity is total and complete. Thereafter, in succeeding sections, the Legislature sought to identify those governmental activities for which the discretionary immunity rule would apply.

"Under the general provisions relating to liability, sections 815 to 818.8 consider the responsibility of the governmental entity, and sections 820 to 822.2 involve liability of public employees. Section 815.2 imposes upon the public entity legal responsibility in those cases in which the employee is not immune. Thereafter follow a series of sections pertaining to particular areas of governmental activities classified as dangerous conditions of public property (§§ 830 to 840.6); police and correction activities (§§ 844 to 846); fire protection (§§ 850 to 850.8); medical, hospital and public health activities (§§ 854 to 856.4); tax matters (§§ 860-860.4); and tort liability based on agreements between public entities (§§ 895-895.8).

"The pertinent section with which we are here concerned, section 845.8, falls within those pertaining to police and correctional work.

"We have said recently that literal construction will not prevail if it is opposed to legislative objective. (*Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 712 [86 Cal.Rptr. 7].) Several indicia point to the legislative intent to create something less than an absolute, blanket immunity for all injuries caused by prisoners who have escaped regardless of circumstances. This is suggested first by the comment of the Law Revision Commission to the effect that (referring to § 845.8) 'This section is a specific application of the discretionary immunity recognized in California cases and in Section 820.2.' Comments of the commission are a well accepted source from which to ascertain legislative intent. In considering section 815.4 the Supreme Court has said: 'Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. [Citations.] This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission proposing the bill.' (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508]; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 630 [87 Cal.Rptr. 481, 470 P.2d 617].)

"Further and additionally, the Legislative Committee comment (Senate)

to section 820.2 recognizes that section 845.8 confers a 'discretionary' immunity in its use of the following language: 'In the sections that follow, several immunities . . . are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated in statutory form so that the liability of public entities and employees may not be expanded by redefining "discretionary immunity" to exclude certain acts that had previously been considered as discretionary.'

"Finally, and of even greater force, is the analysis of the Supreme Court in *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 795 [73 Cal.Rptr. 240, 447 P.2d 352], which was presented with an interpretation of the exact section (845.8), albeit another subdivision thereof. The clear import of *Johnson* is to establish section 845.8 as conferring discretionary immunity in the exercise of 'basic policy decisions,' insofar as, under subdivision (a), the activity concerns a paroled or released prisoner. The court accepts the statutory language of section 845.8 as permitting the analysis which characterized a series of federal decisions interpreting similar 'discretionary' language in section 2680, subdivision (a), of the Federal Tort Claims Act. This process is described in *Johnson* in the words, 'although a basic policy decision (such as standards for parole) may be discretionary and hence warrant governmental immunity, subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence.' (P. 797.) Describing it in another way, it may be said that the formulation of a policy decision or judgment resulting from the weighing and evaluation of a number of varying factors will immunize the public entity from liability under a discretionary immunity, but the faulty execution, performance or discharge of the policy or plan established by the decision, once made, may result in liability rather than immunity. The mere expression of the principle points to problems of articulation and application, for, conceptually, few 'ministerial' acts have no literal 'discretionary' attributes. Notwithstanding this difficulty of clear definition, the courts have adhered to the principle which is well grounded in the understandable reluctance of the judicial arm to interpose its will in the policy decision making process of coordinate branches of government.

"At least four different theories are recognizable in determining whether in a given factual situation the acts involved constituted 'discretionary' as opposed to 'ministerial' conduct. These are the 'dampen the ardor,' the 'semantic,' the 'subsequent negligence' and the 'planning' as opposed to 'operational' approaches. (See *Notes on the California Tort Claims Act, The Discretionary Immunity Doctrine in California*, 19 Hastings L.J. 561, 566 et seq.) The rationale for each approach varies somewhat. There is

a certain inconsistency between them. Some have seen a greater 'flexibility' in the 'dampen the ardor' concept as opposed to the 'subsequent negligence' theory. (See 19 Hastings L.J. 561, 572.)

"*Johnson* reminds us that the 1963 Tort Claims Act did not abrogate the underlying holding of *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211, 219, that ' "when there is negligence, the rule is liability, immunity is the exception." Accordingly, courts should not casually decree governmental immunity; . . .' (*Johnson* v. *State of California, supra,* 69 Cal.2d at p. 798.)

"*Johnson* also directs us to search for 'the reasons for granting immunity' and 'to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision.' (P. 794.) The reason for recognizing an immunity referable to escaping or escaped prisoners is to leave the administrators of jails and prisons free and unfettered from legal criticism of, and attack on, the organization, program, and general direction of jails, prisons and custodial institutions. Such activity is highly specialized, complex, and much too susceptible to unknowledgeable 'second guessing.' Defendant county, having decided the location of the jail in question, having fixed the degree of security for the facility, having determined the program for the inmates and having established general policy for the operation of the jail in question, should not be subject to judicial scrutiny of its considered judgments. In the administration of a jail facility certain decisions are inherent in determining the intake policy, establishing the nature and kind of custodial institution to be established and maintained, and in the determination of the necessary standards and practices to effectuate the purposes of the facility. Such judgments are rooted in the wisdom, experience, prudence, consideration, discrimination, discernment and sagacity of the policy-making entity involved. They are discretionary and immune. Courts should not interpose themselves in such determinations.

"After the point in time, however, when such judgments have been reached, the implementation of the plan, the execution and furtherance of the design previously adopted partake of action of a different character. Although perhaps improperly described as 'ministerial,' the action of the agency to accomplish and meet the purpose of the plan is of a nature less exalted. Such activity, if negligently performed, will impose liability. The blanket of immunity does not stretch so far as to cover conduct which may constitute negligent performance of obligations required to implement the policy decisions. If the discretionary policy judgment requires a door to be locked, the immunity does not protect the entity which leaves the

door unlocked. The immunization of the agency in determining a policy standard does not protect the action that falls below the standard.

"Such an analysis invites scrutiny of the actions alleged in the complaint herein to which the demurrer was interposed. The following is a summary of the charging allegations as contained in the first cause of action in the complaint: About December 17, 1970, defendant Sacramento County owned and operated a branch jail or industrial camp at Elk Grove in Sacramento County; defendants Goodridge and Logsdon were sentenced to jail for certain crimes and transferred to the Elk Grove facility, without prior classification, for detention and restraint; the law required prior classification of said inmates and their continued guard, restraint, control and supervision in order to prevent their escape; defendant county through its agents and employees negligently failed to keep the doors, windows and other exits locked and secured and said inmates were permitted to escape, unlawfully entered the home of the deceased and during the course of a burglary fatally shot him. In the second cause of action it is alleged that defendant county negligently failed to pursue said inmates or, alternatively, warn of their escape. The third cause of action alleges that the county maintained the jail in question in a dangerous and defective manner in that the doors therein were permitted to be unlocked, and although said inmates were known to be dangerous, the same were uncontrolled and unsupervised, as a result of which the inmates were permitted to escape.

"Thus, the complaint alleges negligence in failure to classify prisoners, in securing the jail facility, and in the pursuit of the jail inmates and the warning of their escape. The charges relate to the internal administration of the jail, and they pertain to alleged failures to contain and control. They smack of faulty implementation of a plan.

"We conclude, therefore, that any action properly characterized as 'discretionary,' and which falls within the reasonably accepted meaning of the term, has been exhausted at a point in time prior to the performance or nonperformance of acts charged by the complaint.

"We note that the complaint, alleging as it does negligence in classifying or failing to classify prisoners, as well as negligently failing to guard, control and restrain them, contains an amalgam of charges some of which, on close examination, may constitute conduct within the discretionary immunity rule and some of which are not. Special demurrers or motions to strike are available to petitioner to reach and test the nature of such activities.

"It follows, accordingly, that the trial court properly overruled the demurrer interposed."

I believe that we should adopt the opinion of Presiding Justice Richardson as the opinion of this court, and deny the writ of prohibition.

Peters, J., concurred.

The petition of the real parties in interest for a rehearing was denied January 17, 1973. Tobriner, J., was of the opinion that the petition should be granted.