[Civ. No. 40857. Second Dist., Div. Five. Oct. 30, 1973.]

FRANK J. MORRIS, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

## COUNSEL

Paul M. Posner for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Blanche C. Bersch, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**STEPHENS, J.**—Appellant petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1094.5) directing respondent to grant his claim for unemployment insurance benefits. The trial judge denied the writ, made certain findings of fact and conclusions of law, and judgment was entered accordingly. Appellant appeals.

There is no dispute as to the facts surrounding the acts which preceded appellant's claim. On or about March 25, 1970, while in the employ of the United States Postal Service, an agency of the United States Government, appellant received a notice of proposed adverse action from his employer charging (1) that appellant had threatened to do bodily harm to supervisors, and (2) that appellant had engaged in conduct unbecoming a public employee. The notice of proposed adverse action contained both a proposal that appellant be removed and a proposal that he be emergently suspended. Appellant replied to the notice and subsequently received a written decision from the director, San Francisco Postal Region, informing him that both proposals had been approved. Appellant appealed the decision to the assistant postmaster general, operations department, who sustained the decision. Appellant appealed this decision to the Board of Appeals and Review of the United States Postal Service. That board found that there was sufficient evidence to support the allegation contained in charge (1); however, charge (2) was not sustained. The board also indicated that removal of appellant from the Postal Service was a corrective action of unnecessary severity and cancelled the removal action, substituting a suspension without pay, to commence the same day that the removal action would have taken effect.[1] The board also upheld the emergency suspension meted out to appellant.

Appellant thereafter filed a claim for unemployment compensation benefits with the Department of Human Resources Development (hereinafter, the department). The department received federal findings as to the reasons for appellant's suspension from the Postal Service and on the basis of those findings, it denied the claim. Appellant filed an appeal and the matter came on for a hearing before a referee of respondent. The referee rendered a written decision holding that appellant was disqualified for benefits under California Unemployment Insurance Code section 1256, on the ground that appellant's conduct constituted a voluntary leaving of work without good cause. Appellant then appealed to the Unemployment Insurance Appeals Board, which affirmed the referee's decision. Appellant sought mandamus in the superior court, and after independently reviewing the administrative record the court concluded that the weight of the evidence supported the Unemployment Appeals Board decision. In its conclusions of law, the court did disagree with the appeals board's conclusion that appellant had voluntarily left his place of last employ without good cause. The trial court concluded that the evidence supported the legal conclusion that

---

[1]Appellant was emergently suspended from his employment as of April 9, 1970; the initial removal action was to be effective as of October 9, 1970.

appellant's actions of threatening bodily harm to his supervisors constituted "misconduct" within the scope of section 1256 of the Unemployment Insurance Code, and that appellant's resulting suspension from work constituted a discharge for misconduct within the scope of the above section. We agree.

Appellant contends that the trial court erred prejudicially by (1) affirming respondent's decision denying benefits on the ground of "discharge for misconduct," whereas respondent had denied benefits on the ground of "voluntary leaving;" (2) finding that appellant's suspension constituted a "discharge for misconduct;" (3) not disposing of appellant's claim for benefits for the period of June 5, 1970, through October 10, 1970; and (4) not holding that the initial emergency suspension was invalid because it was not based upon any hearing, in violation of appellant's right to due process of the law.

■ Appellant maintains that the trial court could not sustain respondent's decision on any ground other than that relied upon by respondent, to wit, that appellant had left his most recent work "voluntarily without good cause." However, appellant's contention is based upon a misunderstanding of the distinction between findings of fact and conclusions of law. (See *King* v. *California Unemployment Ins. Appeals Board,* 25 Cal.App.3d 199, 204 [101 Cal.Rptr. 660].) The reasons why appellant was suspended from his employment were factual determinations which were made by the department. These determinations were not altered or modified in any manner by the trial judge. However, the determination whether such facts constituted a "discharge for misconduct" or a "voluntary leaving" as defined by Unemployment Insurance Code section 1256 is a conclusion of law which *is* subject to judicial review. (*Abud* v. *Department of Employment,* 14 Cal. App.3d 405, 407 [92 Cal.Rptr. 446]; *Barrett* v. *Cal. Unemp. Ins. Appeals Bd.,* 190 Cal.App.2d 854, 860 [12 Cal.Rptr. 356].) ■ The ultimate interpretation of a statute is an exercise of judicial power. (*Bodison Mfg. Co.* v. *Calif. E. Com.,* 17 Cal.2d 321, 326 [109 P.2d 935].) However, an *administrative determination will be upheld whenever that decision is just and reasonable and the particular theories advanced by the agency will not be deemed controlling.* (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 73 C.A.2d 555 [166 P.2d 908].) Thus, an incorrect interpretation of the law arrived at by the application of an incorrect legal theory cannot invalidate a determination otherwise correct in result. (*Steele* v. *L.A. County Civil Service Com.,* 166 Cal.App.2d 129, 138 [333 P.2d 171].) Here, we do not have a situation in which the administrative agency's findings are in the main erroneous or unsupported by the evidence. While the trial court disagreed with the legal conclusions drawn, the findings stand unimpeached.

■ Appellant's second contention is that he was not "discharged" within the meaning of section 1256 of the California Unemployment Code.[2] Appellant has urged the proposition that the Legislature's use of the word "discharge" evidences an intent that under this section a person is disqualified for benefits only when there has been a complete separation or severance between the employee and the employer. Appellant argues that since in this case he was only suspended for an indefinite period, the trial court erred in holding that he had been discharged. However, while appellant's contention may be superficially sustainable from a literal interpretation of the statute, it does not comport with the underlying purpose of the legislation, and must be rejected.[3] (*County of Sacramento v. Superior Court,* 8 Cal.3d 479, 482 [105 Cal.Rptr. 374, 503 P.2d 1382]; *Pacific Gas & Elec. Co. v. Morse,* 6 Cal.App.3d 707, 712 [86 Cal.Rptr. 7].) Section 100 of the Unemployment Insurance Code defines the policy to be "a system of unemployment insurance providing benefits for persons unemployed *through no fault of their own,* and to reduce involuntary unemployment . . . to a minimum." (Italics added.) We cannot say that an employee who engages in misconduct sufficient to warrant separation from his employment, as was the case here, —regardless of length of time of the separation—has become unemployed through no fault of his own. Clearly, a person who has been indefinitely suspended for misconduct has become unemployed just as surely as one who has been discharged.[4] A contrary holding would operate to encourage employers to terminate all employees found guilty of misconduct warranting disciplinary action, rather than applying the less stringent penalty of a temporary suspension, since a suspension would entitle the employee to benefits which are chargeable against the employer's reserve fund.

---

[2]Unemployment Insurance Code section 1256 provides: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work . . . ."

[3]"It is axiomatic that in analyzing statutes for the purpose of finding and effectuating the legislative intent, 'regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments.' (*County of Los Angeles v. Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526].)" (*California Comp. Ins. Co. v. Ind. Acc. Com.* 128 Cal. App.2d 797, 806 [276 P.2d 148].) This method of statutory construction is fully applicable to the provisions of the Unemployment Insurance Code.

[4]We note that when the Legislature wished to express in provisions related to those here at issue the concept of a complete severance of the employee from his work, the term "termination" was used. Section 1256 (Unemp. Ins. Code) provides: ". . . An individual whose employment is terminated under the compulsory retirement provisions of a collective bargaining agreement to which the employer is a party, shall not be deemed to have left his work without good cause."

**1008**

The difference in terminology between "discharged" and "suspended" is immaterial to the question here at issue. In each instance, the employee has been disciplined and has become unemployed as a result of his own misconduct. It has been held that eligibility for benefits under this code is to be determined by the worker's conduct. (*Coast Packing Co. v. Cal. Unemp. Ins. Appeals Bd.*, 64 Cal.2d 76, 80 [48 Cal.Rptr. 854, 410 P.2d 358].) We cannot deduce from the provisions of section 1256 a legislative intent to distinguish between separations from employment due to employee misconduct, whether labeled a suspension or a termination, based upon the use of the term "discharge" in the statute.[5] For the purposes of section 1256, an employee who is separated from his work because of misconduct,[6] either by temporary suspension or by termination, is "discharged" within the meaning of section 1256.

█ Appellant's third contention is somewhat obscure. He appears to contend that there has been no disposition of his claim for benefits for the period of June 5, 1970, through October 10, 1970, during which he was only emergently suspended. Appellant alleges that the final "Notice of Determination" dated April 13, 1971, from which the administrative appeal was taken, only denied benefits commencing October 9, 1970, and thus failed to effect a disposition for the period from June 5 through October 10, 1970. However, appellant is not now entitled to raise this contention for the first time on appeal. █ Generally, unless the error is such that it could not have been corrected below, the failure to bring the error to the attention of the administrative agency by means of an objection or otherwise precludes its review on appeal. (See *Sabella* v. *Southern Pac. Co.*, 70 Cal.2d 311 [74 Cal.Rptr. 534, 449 P.2d 750]; *Rosenthal* v. *Harris Motor Co.*, 18 Cal.App.2d 403, 408 [257 P.2d 1034]; 6 Witkin, Cal. Procedure, § 272, pp. 4260-4261.) █ Appellant has not shown that the contention now raised with respect to the period from June 5 to October

---

[5] In construing the other ground in section 1256 for denying an employee unemployment compensation (leaving one's most recent work voluntarily without good cause), it has not been required that the employment relationship be completely or technically terminated. (*Douglas Aircraft Co.* v. *California Unemp. Ins. Appeals Board*, 180 Cal.App.2d 636, 641 [4 Cal.Rptr. 723].) We cannot ascribe to the Legislature an intent that an employee voluntarily separated from his work would be precluded from eligibility, whereas an employee who is suspended because of his misconduct would be eligible for benefits. It was clearly the intent of the Legislature to limit the available funds for the use of those persons who became unemployed through no fault of their own and by events beyond their control. (*Chrysler Corp.* v. *California Emp. etc. Com.*, 116 Cal.App.2d 8, 16 [253 P.2d 68].)

[6] The trial judge made a specific finding that appellant's conduct of threatening bodily harm to his supervisors constituted "misconduct" within the scope of section 1256.

10, 1970, was asserted below. In any event, since the emergency suspension was premised upon the same conduct which resulted in the indefinite suspension of October 9, 1970, and which we have determined operates to deny appellant the right to collect unemployment benefits, no real doubt exists that were this matter remanded appellant would be denied benefits for that period. Under the circumstances, there is no reason to remand the case for consideration as to whether appellant is entitled to benefits for the period from June 5 to October 10, 1970. (*Byrd* v. *Savage*, 219 Cal.App. 2d 396, 402 [32 Cal.Rptr. 881]; *Sica* v. *Board of Police Commissioners*, 200 Cal.App.2d 137, 142 [19 Cal.Rptr. 277]; *Strode* v. *Board of Medical Examiners*, 195 Cal.App.2d 291, 304 [15 Cal.Rptr. 879].)

■ Appellant's contention that the emergency suspension imposed by the federal agency was invalid because of the absence of a due-process hearing is totally irrelevant to the question of whether or not appellant is entitled to unemployment benefits. Even if appellant's right to due process of law was violated by the application of the emergency suspension, his proper course of action would be to seek relief against his employer for wrongful discharge. Whether or not a party is entitled to unemployment benefits is governed solely by the Unemployment Insurance Code. The fact that the employer may have violated one or more of the employee's constitutional, statutory, or common law rights is immaterial to that decision. Appellant is seeking the wrong remedy in the wrong forum. The contention is without merit for the purposes of this appeal.

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.