Opinion
 

 FRIEDMAN, Acting P. J.
 

 —Plaintiff Roseville Community Hospital seeks to hold the state and the state Attorney General liable for damages suffered when Health Maintenance, Inc. (HMI), a private, prepaid health care service, became bankrupt, owing the hospital more than $135,000. The hospital alleges that its loss resulted from negligent enforcement of the state laws governing prepaid health care plans. The defendants demurred; claiming statutory immunity from liability. The trial court sustained the immunity defense. The hospital appeals from the ensuing judgment of dismissal.
 

 Between 1965 and 1976 private prepaid health care service plans were regulated by a set of Government Code provisions known as the Knox-Mills Health Plan Act.
 
 [1]
 
 The act was designed to regulate plans other than those operated by licensed insurance carriers. We summarize the act’s principal features as set forth in the (now repealed) provisions of the Government Code:
 

 Health care service plans were forbidden to engage in deceptive advertising or solicitation; although no penalties were prescribed, the Attorney General was authorized to attain compliance by conference, by cease and desist orders and, at his election, by civil injunction. (§§ 12532-12535.) The Attorney General was dirécted to maintain a register of health care service plans, including copies of their membership contracts and their advertising. (§ 12537.) Eveiy plan was directed to register and annually to reregister with the Attorney General. (§ 12538.) Proposed changes in coverage contracts were to be submitted to the
 
 *586
 
 Attorney General for approval with a view to prevention of deceptive contracts. (§§ 12538.1, 12538.2.) Plans were required to maintain net assets or financial reserves in order to protect their subscribers. (§§ 12539, 12539.1.) Under some circumstances the Attorney General could require increases in reserves: (§ 12539.3.) Financial records were open to inspection by the Attorney General. (§ 12538.3.) The Attorney General was authorized to adopt implementing regulations. (§ 12538.5.)
 

 According to its complaint, Roseville Community Hospital in 1973 commenced providing hospital services to patients who were subscribers of HMI. The two organizations had no formal contract. Upon admitting an HMI subscriber, the hospital would confirm the patient’s eligibility, provide services, and bill HMI. In the fall of 1974 HMI became delinquent in its account with the hospital. In August 1975 HMI was adjudicated bankrupt, owing the hospital an irrecoverable debt. The hospital’s damage complaint alleges that the Attorney General negligently allowed HMI to operate as a health care service plan without registration and without maintaining the financial reserves demanded by the Knox-Mills Health Plan Act.
 

 The liability issue turns on the Government Code provisions comprising the Public Tort Claims Act. An opening provision of the act affirms the public’s immunity from tort liability “except as otherwise provided by statute.” (§ 815.) The hospital’s assertion of state liability is grounded on section 815.6" which makes public entities liable when breach of a mandatory duty causes injuries of a kind the duty is designed to prevent.
 
 [2]
 

 The immunity claims of the state and of the Attorney General are based upon three statutes: first, section 818.2, declaring that public entities are not liable for injuries caused by failure to enforce any law; second, section 820.2, which declares a general rule of immunity of public employees from liability for injuries resulting from the exercise of official discretion; third, section 821, which provides that a public employee is not liable for any injury caused by his failure to enforce an
 
 *587
 
 enactment.
 
 [3]
 
 These immunities are complemented by section 815.2, subdivision (b), which immunizes the public entity whenever its employee is immune from liability.
 

 Decisional law preceding the Public Tort Claims Act had recognized both the general immunity for discretionary activity and the special immunity attaching to law enforcement failures.
 
 (Lipman
 
 v.
 
 Brisbane Elementary Sch. Dist.
 
 (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465];
 
 White
 
 v.
 
 Towers
 
 (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636];
 
 Rubinow
 
 v.
 
 County of San Bernardino
 
 (1959) 169 Cal.App.2d 67 [336 P.2d 968].) The draftsmen of the Public Tort Claims Act viewed the latter as a special expression of the former, yet took care to codify the special immunity for law enforcement failures lest its absence be regarded as a signal for erosion of preexisting decisional law. (See Cal. Law Revision Com., comment following § 818.2; Sen. Com. comment following § 820.2.) The statutes declaring immunity for damages caused by law enforcement failures encompass only discretionary law enforcement activity
 
 (Morris
 
 v.
 
 County of Marin
 
 (1977) 18 Cal.3d 901, 916 [136 Cal.Rptr. 251, 559 P.2d 606]). They have riot barred liability when breach of a mandatory law enforcement duty was discerned. (See
 
 Sullivan
 
 v.
 
 County of Los Angeles
 
 (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865];
 
 Bradford
 
 v.
 
 State of California
 
 (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852];
 
 Shakespeare
 
 v.
 
 City of Pasadena
 
 (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863];)
 

 The hospital charges the state with liability but fails to identify any mandatory duty breached by its agent, the Attorney General. The Knox-Mills provisions imposed upon the Attorney General only one positive duty—it directed him to maintain a registry of health care service plans.
 
 [4]
 
 The hospital’s pleading alleges no breach of that
 
 *588
 
 duty. Its lawsuit is outside the “mandatory duty” provisions of section 815.6.
 

 The Attorney General’s individual defense is hinged to the law enforcement immunity declared by section 821 (fn. 3,
 
 ante).
 
 Describing the parallel immunity supplied by section 818.2, the Law Revision Commission has observed: “ . . . This section recognizes that the wisdom of legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained.” (Cal. Law Revision Com. comment following § 818.2.)
 

 The comment is equally appropriate in descrying the scope of section 821. The conventional care-versus-negligence dichotomy fails to measure the quality of most law enforcement activities. Evaluations of law enforcement and regulatory performance entail analysis of the agency’s powers, of the role imposed upon it by law and the limitations imposed upon it by budget. The agency’s effectiveness varies not only with the skill and vigor of its staff but also with the conceptual quality of the statute it enforces and the adequacy of its budget. The latter elements are controlled by legislative decision-makers. The legislative body may supply the agency with means falling short of its commitments. The efficacy of law enforcement depends heavily on governmental decisions external to the agency, hence is more susceptible to political than juridical evaluation. These considerations, as we understand the Law Revision Commission’s comment, underlay the law enforcement immunities codified in sections 818.2 and 821.
 

 These underlying considerations characterize the case at bar. The Knox-Mills Health Plan Act extended various kinds of authority to the Attorney General, established no bureau or subagency charged with enforcement responsibility, imposed no penalties, supplied the Attorney General with civil but not criminal sanctions, and offered him a series of choices between formal and informal compliance procedures. It laid on him only one mandatory duty—to maintain a registry for those plans which came forward to register. It did not mandate him to spread a dragnet for unknown, unregistered health services. The Legislature
 
 *589
 
 devised a “soft” statute here, designed to attain conformity through inducement rather than threat.
 

 The real target of the hospital’s complaint is the Attorney General’s failure to ferret out HMI, force it into registration and into compliance with the law’s financial reserve demands. The hospital does not allege the Attorney General’s awareness of HMI’s existence. It does no more than accuse the Attorney General of failing to detect an unknown law violator. Its claim evokes the analogy of the theft victim who seeks damages from the police for their failure to catch the thief before instead of after the crime.
 

 In
 
 Rubinow
 
 v.
 
 County of San Bernardino, supra,
 
 169 Cal.App.2d 67, the court held that the police were immune from liability to a party injured by a drunk driver whom the police had failed to catch. Similarly here, the Attorney General is immune from liability to the party injured by a law violator whom the Attorney General did not detect. The failures alleged by plaintiff are fully covered by sections 818.2 and 821.
 

 The hospital, nevertheless, charges the Attorney General with individual liability for a law enforcement lapse unprotected by section 820.2 and outside the scope of sections 818.2 and 821. It relies on
 
 Johnson
 
 v.
 
 State of California
 
 (1968) 69 Cal.2d 782, 793-794 [73 Cal.Rptr. 240, 447 P.2d 352], which confines discretionary immunity under section 820.2 to “basic policy decisions” and withholds it from “operational” decision-making. The
 
 Johnson
 
 decision equates discretionary, policy decision-making with planning activity in contrast to the “operational” level of decision-making; a-public employee consciously considers pros and cons in deciding what action to take, yet his action is not discretionary in the statutory sense when it is made at a low, ministerial rung of official action.
 
 (Id.,
 
 at pp. 793-796.) Generally, immunity exists if the injury results from the officer’s discretion to undertake an activity, liability if it results from his negligence in performing it after he has made the discretionary decision to do so.
 
 (McCorkle
 
 v.
 
 City of Los Angeles
 
 (1969) 70 Cal.2d 252, 261 [74 Cal.Rptr. 389, 449 P.2d 453];
 
 Sava
 
 v.
 
 Fuller
 
 (1967) 249 Cal.App.2d 281, 290 [57 Cal.Rptr, 312], quoted with approval in
 
 Johnson
 
 v.
 
 State of California, supra,
 
 69 Cal.2d at p. 796.)
 

 Whether the
 
 Johnson
 
 standard limits the scope of the law enforcement immunities codified in sections 818.2 and 821 is open to question. (See
 
 County of Sacramento
 
 v.
 
 Superior Court
 
 (1972) 8 Cal.3d 479, 485 [105 Cal.Rptr. 374, 503 P.2d 1382];
 
 Whitcombe
 
 v.
 
 County of Yolo
 
 (1977) 73
 
 *590
 
 Cal.App.3d 698, 712-716 [141 Cal.Rptr. 189].) Even on the assumption that it does, the hospital’s complaint describes no decision of the operational variety. The Knox-Mills legislation, as we have noted, did not require the Attorney General to conduct active discovery operations. The real source of plaintiff’s complaint is the Attorney General’s failure to deploy his forces to discover and bring to heel an unregistered health plan. Law enforcement and regulatory activity entail continual choices among priorities. A decision to devote available facilities and personnel to selected areas and to abstain from active pursuit of others is a policy or planning decision at a relatively high internal level. The hospital’s injur}' resulted from the discretion-impelled absence of a governmental activity, not from the activity’s negligent conduct. Thus, the
 
 Johnson
 
 standard does not propel the claim past the barrier of the discretionary immunity statute.
 

 Judgment affirmed.
 

 Paras, J., and Evans, J., concurred.
 

 [1]
 

 All statutory citations will refer to the Government Code unless otherwise specified. The Knox-Mills Health Plan Act has been repealed and replaced by a revised law which vests enforcement authority in the Commissioner of Corporations. (See Health & Saf. Code, § 1340 et seq. operative July 1, 1976.)
 

 [2]
 

 Government Code section 815.6 provides as follows: “Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.”
 

 [3]
 

 Government Code section 818.2 provides as follows: “A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law.” Government Code section 820.2 provides as follows: “Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.” Government Code section 821 provides as follows: “A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment.”
 

 [4]
 

 The Knox-Mills Act (§ 12537) declared that the Attorney General “shall” maintain a registry of health care service plans. As is usual with California- codes, the Government Code declares that “shall” is mandatory and “may” is permissive unless the context
 
 *588
 
 requires otherwise. (§§ 5, 14.) (See generally,
 
 Morris
 
 v.
 
 County of Marin
 
 (1977) 18 Cal.3d 901, 907-910 [136 Cal.Rptr. 251, 559 P.2d 606].)