[No. C045502. Third Dist. Sept. 30, 2004.]

ROBERT SINAIKO, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
MEDICAL BOARD OF CALIFORNIA, Real Party in Interest.

COUNSEL

Riordan & Horgan, Dennis P. Riordan, Donald M. Horgan and Dylan L. Schaffer for Petitioner.

Sidney M. Wolinsky for Disability Rights Advocates as Amicus Curiae on behalf of Petitioner.

Debra Back for Children's Advocacy Institute as Amicus Curiae on behalf of Petitioner.

Catherine I. Hanson and Gregory M. Abrams for California Medical Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Andrea Lynn Hoch and James M. Humes, Chief Assistant Attorneys General, Carlos Ramirez and Alfredo Terrazas, Assistant Attorneys General, Vivien Hara and Russell W. Lee, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**RAYE, J.**—In its next life, this case may raise fascinating issues involving the standard of care when a physician employs alternative therapies for children suffering from attention deficit and hyperactivity disorder (ADHD) or adults suffering from a wide assortment of hard-to-diagnose symptoms. But in the writ proceedings now before us, we are presented with a more basic deprivation of due process—the wholesale disqualification of petitioner's experts.

The trial court acknowledged the "glaring error" but refused to remand the case to real party in interest Medical Board of California (Board) to either

consider the testimony offered by the expert witnesses of petitioner Robert Sinaiko, M.D., or to "bridge the analytic gap" between its finding that the witnesses were credible and its conclusion that they were not qualified. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12] (*Topanga*).) Moreover, the erroneous notion that the *Kelly-Frye* standards of admissibility of scientific evidence established the standard of care infiltrated the administrative proceedings. (*People v. Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240] (*Kelly*); *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013 (*Frye*), superseded by rule as noted in *Daubert v. Merrell Dow* (1993) 509 U.S. 579 [125 L.Ed.2d 469, 113 S.Ct. 2786].) Because the Board's disqualification of petitioner's experts rendered his hearing fundamentally unfair, particularly when the standard of care was obfuscated by *Kelly-Frye* standards of admissibility, we must remand the case to the Board and postpone consideration of the many issues raised by the parties and amici curiae.

## ALLEGATIONS, PROCEEDINGS, AND FINDINGS

Petitioner is Board certified in internal medicine and allergy and clinical immunology. On November 1, 1996, the Board filed an accusation alleging that petitioner's treatment of nine-year-old L.T.S. "constitutes an extreme departure from the prevailing standard of practice among the community of California licensed practitioners. [¶] . . . [¶] . . . Overall, [petitioner's] care and treatment of minor patient L.T.S. was well outside the prevailing standard of practice of medicine in that he failed to take an adequate history and physical examination; to develop and follow a rational and methodical plan, especially in such a non-emergent case; to give or even allow an adequate trial of accepted treatments (i.e.[,] Ritalin) before moving on to treatments which are not only controversial but have serious and unknown risks associated with them and by failing to provide some sort of support for the original diagnosis."

On February 27, 1997, the Board filed an amended and supplemental accusation, wherein it alleged that petitioner negligently cared for three additional patients between 1986 and 1993. The Board asserted that petitioner treated a 32-year-old male, J.H.; a 30-year-old female, S.L.; and a 24-year-old male, R.S., in a grossly negligent (Bus. & Prof. Code, § 2234, subd. (b)) and/or repeatedly negligent (Bus. & Prof. Code, § 2234, subd. (c)) and/or incompetent (Bus. & Prof. Code, § 2234, subd. (d)) manner. All three patients displayed a myriad of unusual symptoms. The allegations all involved petitioner's consistent use of a handful of antifungal drugs and medical treatments, including dietary restrictions, to treat allergies and other chronic immunologic disorders. Petitioner prescribed various drugs, according to the amended accusation, that had not been approved by the Federal Drug

Administration (FDA) in the form ordered. Additionally, the Board alleged that in failing to comply with FDA Institutional Review Board requirements and to provide proper informed consent, petitioner was engaged in improper human experimentation on his patients.

Medical experts offered divergent opinions about the standard of care during the 26-day administrative hearing. It is a fair reading of the record to say that there was some confusion over the applicability of the *Kelly-Frye* test governing the use of new scientific techniques, including its language regarding general or widespread acceptance. Throughout the hearing, the Attorney General attempted to portray petitioner as a "quack" using "unproven" and "dubious" treatments that were not "generally-accepted" by the medical community. He suggested that any practice method that is not generally accepted falls outside the standard of practice.

For example, during cross-examination of one of the Board's experts, petitioner's lawyer attempted to use a grid to distill precisely in what way the expert believed petitioner's care and treatment of his patients fell below the standard of care. The Attorney General objected, characterizing the issue as "the classic *Kelly*[-]*Frye* situation." He argued, "This is really a back-door, end-around to *Kelly*[-]*Frye* for purposes of trying to get to the gist of this case, which is EPD [enzyme potentiated desensitization]. The testimony has been clear from Dr. Terr. His testimony has been that it is his opinion that EPD and betaglucuronidase and the Multiple Chemical Sensitivity diagnosis and the Clinical Ecology movement within medicine has not gained the level of acceptance from the general mainstream community to allow it to come into evidence for the purposes of satisfying an evidentiary relevancy objection." Moreover, throughout the examination and cross-examination of the witnesses, the Attorney General asked whether the particular treatment or drug regimen was "generally accepted" or had "gained widespread acceptance."

Based on 23 findings of cause for discipline sustaining the essential allegations in the accusation, the administrative law judge (ALJ) recommended that the Board revoke petitioner's license. Central to the dispositive issue now before us, the ALJ found: "The experts who testified on behalf of the [petitioner] concerning such medical diagnoses as Multiple Chemical Sensitivity, Environmental Illness, Chronic Fatigue Syndrome and Candida Hypersensitivity and that Candida Hypersensitivity causes symptoms and diseases such as Attention Deficit Hyperactivity Disorder, Autism or other behavioral disorders were of questionable credibility in that their testimony was not based on generally accepted scientific and medical principles as required by such cases as *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579 [125 L.Ed.2d 469, 113 S.Ct. 2786]." Petitioner does not

otherwise challenge the sufficiency of the evidence to support the findings of the ALJ, the Board, or the trial court.

The Board adopted the ALJ's proposed decision and revoked petitioner's license. In August 1998 petitioner requested reconsideration. The *Kelly-Frye* analogy became more focused. In his briefing, the Attorney General equated the standard of practice criteria in administrative proceedings and the *Kelly-Frye* evidentiary rule governing the admission of scientific tests in civil and criminal trials. In other words, a diagnostic or treatment technique must have gained widespread or general acceptance to fall within the standard of practice.

The Board granted the request for reconsideration and stayed execution of its order of revocation. On September 3, 1999, the Board modified its prior findings and eliminated any reference to the *Kelly-Frye* standard. But without explanation, the Board found all of petitioner's experts "credible in their fields" but "not qualified" for purposes of the hearing. It reduced the penalty against petitioner by revoking his physician's and surgeon's certificate but stayed the revocation and placed him on probation.

In October 1999 petitioner filed a petition for writ of administrative mandamus in the superior court. The court held that the *Kelly-Frye* test did not apply to the expert testimony offered at the administrative hearing and that the Board erroneously rejected the opinions of petitioner's experts. The court explained: "[The Board's] arguments regarding the application of the standards of the *Kelly-Frye* test to the expert testimony in this case are erroneous. The *Kelly-Frye* test applies to new scientific methods used to prove identity or the occurrence of some material fact (such as fingerprints, DNA testing, and battered woman syndrome), but is not used to test all expert testimony. [Citations.] Petitioner is correct in that in several cases [the Board's] experts were questioned as to the general acceptance of particular diagnoses and treatments. The court has given little weight to testimony of misconduct, negligence, and other charges that is based upon a failure of 'general acceptance' of the treatment at issue, as such does not support the violations alleged. Despite arguing that *Kelly-Frye* applies to the admissibility of expert testimony [citation], the ALJ saw the acceptability factor as a matter of credibility, or weight to be given the testimony, and cited *Daubert v. Merrell Dow* [*Pharmaceuticals, Inc.*] (1993) 509 U.S. 579 [125 L.Ed.2d 469, 113 S.Ct. 2786]. [Citation.] For an unexplained reason, the Board completely disregarded the testimony of Petitioner's experts, finding them all 'credible in their fields,' but 'not qualified' for purposes of the hearing. Whether this was due to [the Attorney General's] arguments about general acceptability or for other reasons, the record is not clear. The Board's unsupported conclusion acts as an 'analytic gap['] under *Topanga Ass'n for a Scenic Community v.*

*County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12], and would benefit from remand to remedy this omission. The Board's erroneous conclusion in this respect would also support an order remanding the matter to the Board for consideration of Petitioner's evidence."

The court did not, however, remand the matter to the Board. Rather, the court independently weighed the evidence that the Board should have considered but did not and concluded the Board's decision after reconsideration was supported by the weight of the evidence. The superior court entered judgment denying the petition in September 2003.

Petitioner filed a petition for writ of mandate in this court in November 2003. We issued an alternative writ directing the superior court to grant the relief requested in the petition or to show cause in writing why the relief requested should not be granted. The Board filed a return to the alternative writ demurring to the petition, and petitioner filed his replication.

## DEFINING THE ISSUES AND THE STANDARD OF REVIEW

As is often the situation, our most difficult task in the present case is to determine what is at issue and what is not. The Board asserts that petitioner has politicized a routine disciplinary proceeding and insists this case is not about the contentious debate surrounding the use of Ritalin to treat children with ADHD, nor is it about the utilization of the *Kelly-Frye* test to define the standard of care. In the Board's view, we must restrict our review to determining whether there is substantial evidence to support the trial court's findings.

■ Petitioner, on the other hand, frames the debate quite differently. While the Board would have us defer to the trial court's independent review of the evidence, petitioner insists that the threshold issue is not whether there is substantial evidence to support the findings, but whether the disqualification of his experts rendered the hearing fundamentally unfair. We agree. "Where, as here, the issue is whether a fair administrative hearing was conducted, the petitioner is entitled to an independent judicial determination of the issue." (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101 [63 Cal.Rptr.2d 743].) We must therefore independently review the fairness of the administrative proceedings as a question of law. (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1438 [282 Cal.Rptr. 819].)

For the reasons we discuss at length below, the threshold question of fairness is dispositive. While there was some confusion in the trial court about the applicability of *Kelly-Frye* vernacular to the standard of care, neither party to these proceedings argues that the *Kelly-Frye* test of admissibility of new scientific techniques in criminal and civil trials is equivalent to the standard of care in disciplinary hearings. We need not, therefore, address the *Kelly-Frye* issue or whether that issue was waived.

Nor will we address petitioner's notion that the standard of care encompasses reasonable conduct by a physician. Because we conclude that the wholesale disqualification of petitioner's experts rendered the administrative proceedings unfair as a matter of law, we must remand the matter to the Board. With all the evidence before it, and unencumbered by any mistaken adaptations of the *Kelly-Frye* test of admissibility, " 'the administrative agency should have the first opportunity to decide the case on the basis of all of the evidence . . . , particularly where the evidence would have been crucial to the administrative decision.' " (*Toyota of Visalia, Inc. v. New Motor Vehicle Bd.* (1987) 188 Cal.App.3d 872, 882 [233 Cal.Rptr. 708].) Accordingly, the Board should be given the opportunity to exercise its expertise to assess whether petitioner's treatment of the four patients deviated from the appropriate standard of care. We need not, therefore, prematurely review a standard of care the Board has not applied to all the evidence.

The questions thus presented are twofold: (1) Did the Board's refusal to consider petitioner's expert testimony by finding the experts unqualified deprive petitioner of a fair hearing, and (2) if so, did the trial court err by refusing to remand the matter to the Board to afford petitioner a fair hearing?

## I

Expert witnesses vehemently disagreed as to whether petitioner's alternative therapies for the four patients were consistent with the standard of care. In finding that all of petitioner's experts were disqualified, the Board in essence assured the sufficiency of the evidence to support a finding that petitioner's treatment was below the standard of care. Only those physicians who testified that petitioner had deviated from the standard of care were considered qualified to offer opinions on the dispositive issue in the case. Although the Board failed to explain its rationale for disqualifying petitioner's experts, the finding is at odds with the liberalization of "the rules relating to the testimonial qualifications of medical experts." (*Brown v. Colm* (1974) 11 Cal.3d 639, 645 [114 Cal.Rptr. 128, 522 P.2d 688] (*Brown*).)

■ A witness is qualified to offer an expert opinion if he or she possesses the special knowledge, skill, experience, training, or education sufficient to qualify as an expert on the subject to which the testimony relates. (Evid. Code, § 720.) The Board does not argue that petitioner's experts lacked the credentials or the knowledge to qualify as experts pursuant to section 720. Rather, the Board argues that the experts were not qualified because they did not review the individual cases in sufficient detail and offer opinions specific to the allegations against petitioner. The Board's objections go to the weight, not to the admissibility, of the expert testimony.

■ The Supreme Court in *Brown* held that medical expert opinion should be liberally admitted and then subjected to the rigors of a vigorous cross-examination. "[I]f the threshold test of general testimonial qualification is found to be met and the witness is permitted to testify on direct examination, he is subject to as penetrating a cross-examination as the ingenuity and intellect of opposing counsel can devise. This inquiry may challenge not only the knowledge of the witness on the specific subject at issue, but also the reasons for his opinion and his evaluation of any written material upon which he relied in preparation for his testimony." (*Brown, supra,* 11 Cal.3d at p. 646.) Hence, like here, a witness may lack credibility because he lacks personal acquaintance with the subject matter. (*Ibid.*) Certainly if, as the Board argues now, petitioner's experts were unfamiliar with the individual facts of the medical treatment provided by petitioner to the four patients, it could have given little weight to their opinions. ■ But to disqualify them *en masse* was to deny petitioner the opportunity to present his defense to the charge that his treatment fell below the standard of care. "Indeed, the exclusion of the sole expert relied upon by a party because of an erroneous view of his qualifications is, in a case where expert testimony is essential, an abuse of discretion as a matter of law requiring reversal." (*Id.* at p. 647.) ■ Denying a party the right to testify or to offer evidence is a denial of a fair hearing and requires reversal. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803].)

## II

The Board contends that the trial court, having concluded the Board erred by disqualifying the experts, appropriately reweighed the evidence rather than remand the matter. We disagree. "[I]t is settled that where determinative powers are vested in a local administrative agency and the court finds its decision lacks evidentiary basis, a hearing was denied or it was otherwise

erroneous, it is proper procedure to remand the matter to the agency for further and proper proceedings rather than for the court to decide the matter on the merits." (*Fascination, Inc. v. Hoover* (1952) 39 Cal.2d 260, 268 [246 P.2d 656].)

In a case in which a doctor's hospital privileges were suspended without a fair hearing, the Court of Appeal wrote: "It is clear . . . that the setting aside of a final administrative decision because of unfair hearing practices requires a remand for further proceedings. The rationale is that the agency, or in this case Hospital, because of error, did not fully exercise the discretion legally vested in it. By commencing further proceedings, this discretion is exercised." (*Kumar v. National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1056 [267 Cal.Rptr. 452].) Here, the Board is vested with the discretion to evaluate the quality of medical services provided in the state and to discipline those physicians whose care deviates from the standard of care. On remand to the Board, it must exercise its legally vested discretion based on a consideration of all the evidence.

We restated these same principles in *Newman v. State Personnel Bd.* (1992) 10 Cal.App.4th 41 [12 Cal.Rptr.2d 601]. Presiding Justice Puglia wrote: "Where there are errors in the admission of evidence before an administrative agency, it is proper to remand to the agency for reconsideration. [Citations.] After a reviewing court determines what evidence is admissible, the agency should be given an opportunity to exercise its discretion based on that evidence alone." (*Id.* at p. 49.)

In *National Auto. & Cas. Ins. Co. v. Downey* (1950) 98 Cal.App.2d 586 [220 P.2d 962], the hearing officer did not hear all the evidence. The court found he was not qualified to rule upon the evidence or thereafter to determine the issues. Since "the proceeding under review had not been heard by a properly qualified person, the result is that the issues had not been determined first or at all by the administrative agency. Therefore, the court properly refrained from determining the sufficiency of the evidence." (*Id.* at p. 594.) The court remanded the matter to the agency, not to the trial court, for further consideration. (*Ibid.*)

The trial court relied on a very different strain of cases in refusing to remand the matter to the Board, citing *Whispering Pines Mobile Home Park, Ltd. v. City of Scotts Valley* (1986) 180 Cal.App.3d 152 [225 Cal.Rptr. 364] (*Whispering Pines*) and *Morris v. Unemployment Ins. Appeals Bd.* (1973) 34 Cal.App.3d 1002 [110 Cal.Rptr. 630] (*Morris*). Those cases, where the courts

proceeded without remand after administrative agencies had reached correct conclusions on incorrect legal theories, do not support the trial court's refusal to remand.

In *Morris*, the petitioner was denied unemployment benefits after he was suspended without pay because he threatened his supervisors at the United States Postal Service with bodily harm. The Unemployment Insurance Appeals Board concluded the petitioner had voluntarily left his last employment without good cause. The trial court disagreed with the board's legal conclusion. Rather than finding the petitioner had voluntarily left his last place of employment without good cause, the trial court concluded that his actions constituted misconduct under the Unemployment Insurance Code and therefore he was not entitled to unemployment benefits.

On these facts, the Court of Appeal upheld the trial court's decision and explained: "[A]n administrative determination will be upheld whenever that decision is just and reasonable and the particular theories advanced by the agency will not be deemed controlling. [Citation.] Thus, an incorrect interpretation of the law arrived at by the application of an incorrect legal theory cannot invalidate a determination otherwise correct in result." (*Morris, supra*, 34 Cal.App.3d at p. 1006.)

Interestingly, in *Morris*, the petitioner also alleged that he had been denied a fair hearing. In that context, however, the court found any deprivation of due process irrelevant. "Whether or not a party is entitled to unemployment benefits is governed solely by the Unemployment Insurance Code. The fact that the employer may have violated one or more of the employee's constitutional, statutory, or common law rights is immaterial to that decision. Appellant is seeking the wrong remedy in the wrong forum." (*Morris, supra*, 34 Cal.App.3d at p. 1009.)

■ *Morris* thus stands for the basic notion that a case should not be reversed if the result is legally correct even though the specific legal theory was not properly applied. *Whispering Pines* merely repeats that same unremarkable principle, although ironically the Court of Appeal reversed and remanded the matter to the administrative agency to reconsider a rental increase. (*Whispering Pines, supra*, 180 Cal.App.3d at pp. 161, 163.) In reconsidering the question of what a fair return on investment would be, the court stated that the commission could take additional evidence or rely on the existing evidence. (*Id.* at p. 163.)

■ Thus neither case involved the critical deficiency in the proceedings before us: the failure to provide petitioner with a fair hearing by considering all the relevant evidence that he indeed violated the standard of care. The trial court did not merely substitute one legal theory for another but in fact exercised its discretion in a manner uniquely vested in the Board. As we explained at length above, in those cases where the administrative agency fails to provide a fair hearing or there is a fundamental flaw in the proceedings themselves, the court should remand to the administrative agency to consider the evidence and to exercise its discretion following a full and fair hearing on the merits. This the court did not do. And because "the broad applicability of administrative hearings to the various rights and responsibilities of citizens and businesses" has proliferated and there is an "undeniable public interest in fair hearings in the administrative adjudication arena," the Board, like administrative bodies throughout the state, must provide petitioner a fair hearing and then, equipped with the specialized knowledge residing in its ranks, must exercise its particular discretion. (*Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90–91 [133 Cal.Rptr.2d 234] (*Nightlife Partners*).)

The Board does not translate what the trial court characterized as "glaring error" into a fair hearing analysis. Of course, it does not concede error at all and offers a slightly different justification for avoiding a remand. The Board insists it did not need to explain why it concluded petitioner's experts were unqualified. In short, there was no failure to bridge any analytic gap, and therefore, there was no *Topanga* error. (*Topanga, supra,* 11 Cal.3d at p. 515.) In the Board's view, however, even if the failure to justify the disqualification of the experts could be characterized as *Topanga* error, the remaining voluminous findings made a remand unnecessary. Again, the cases cited by the Board bear no resemblance to the matter at hand.

In both *Saad v. City of Berkeley* (1994) 24 Cal.App.4th 1206 [30 Cal.Rptr.2d 95] (*Saad*) and *Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330 [25 Cal.Rptr.2d 842] (*Desmond*), the petitioners were denied permits for construction. In each case, one of the findings was challenged and the courts held the denial must be upheld as long as the evidence was sufficient to support one of the findings. As the court explained in *Desmond,* "it is not necessary to determine that *each* finding by the Board was supported by substantial evidence. As long as the Board made a finding that any one of the necessary elements enumerated in the ordinances was lacking, and this finding was itself supported by substantial evidence, the Board's denial of appellant's application must be upheld." (*Desmond, supra,* 21 Cal.App.4th at pp. 336–337.)

The Board would have us treat the wholesale disqualification of all of petitioner's experts as the kind of superfluous finding discounted in *Saad* and *Desmond*. The Board's failure to take into account any of the expert opinions that petitioner's treatment of the four patients fell within the standard of care impinged on the very essence and fairness of the hearing. Unlike an additional finding that merely bolstered the rationale for denying the permits in *Saad* and *Desmond*, the evidentiary error compromised the integrity of the proceedings. We reject the Board's suggestion that the length of the many findings justifying the disciplinary action compensated for the error in excising half of the case. Thus, this is not a *Topanga* problem but an evidentiary error at the heart of petitioner's defense to the accusations against him. *Saad* and *Desmond* do not apply.

## III

█ In *Fukuda v. City of Angels* (1999) 20 Cal.4th 805 [85 Cal.Rptr.2d 696, 977 P.2d 693] (*Fukuda*), the California Supreme Court restated the long-standing principle that compels a trial court to give considerable deference to the findings made by an administrative tribunal. (*Id.* at pp. 812–819.) Administrative findings, therefore, come to the judicial system with a presumption of correctness. (*Id.* at p. 819.) In this context, it is particularly important that the administrative agency exercise its discretion following a fair and full hearing on the merits so as to inform the trial court of the reasoned findings of a body with unique expertise in the medical arena.

█ It is true that Code of Civil Procedure section 1094.5, subdivision (e) allows a trial court to admit evidence that was erroneously excluded from the administrative hearing when, as here, the trial court is authorized by law to exercise its independent judgment on the evidence. (*Nightlife Partners, supra*, 108 Cal.App.4th at p. 89.) As a fifth affirmative defense, the Board raises subdivision (e) as a bar to the admission of new evidence offered by petitioner. The Board does not argue, however, that subdivision (e) justified the trial court's refusal to remand the matter to the Board for consideration of all the evidence.

█ Indeed, Code of Civil Procedure section 1094.5, subdivision (e) should not be construed to denigrate the continued vitality of the judiciary's deference to administrative findings as expressed by the Supreme Court in *Fukuda*. Surely a trial court cannot sanction an administrative agency's deprivation of due process by retroactively admitting evidence to support findings made following an unfair proceeding. It is the administrative agency

and not the court that has been delegated the responsibility to hear all the evidence and to render an informed decision based on the evidence and its own expertise. The court, as we are reminded in *Fukuda*, has the benefit of the agency expertise in exercising its independent judgment. We will not use subdivision (e) as a substitute for a fair hearing and informed decision making.

## DISPOSITION

The Board's demurrer to the petition is overruled. The superior court is directed to vacate its judgment denying the petition for writ of administrative mandamus and to enter a new judgment granting the petition and remanding the matter to the Board for further proceedings consistent with this court's opinion. Petitioner shall recover costs on appeal.

Davis, Acting P. J., and Morrison, J., concurred.