[No. B203727. Second Dist., Div. Four. Nov. 17, 2008.]

GARY VINCENT VENTIMIGLIA, Plaintiff and Appellant, v.
BOARD OF BEHAVIORAL SCIENCES, Defendant and Respondent.

298

## Counsel

Rushfeldt, Shelley & Drake, Law Offices of Kenneth W. Drake & Associates, Inc., Kenneth W. Drake and Kenneth R. Myers for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Alfred Terrazas, Assistant Attorney General, Karen B. Chappelle, Marc D. Greenbaum and Christina M. Thomas, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—Gary Vincent Ventimiglia appeals from an order denying his petition for an administrative writ of mandate to overturn a decision by California's Board of Behavioral Sciences (the Board) revoking his license as a marriage and family therapist because he engaged in sexual contact with a client. He contends the Board was required by the Administrative Procedure Act (Gov. Code, § 11340 et seq.; APA)[1] to allow written or oral argument after this court affirmed a superior court order granting his earlier petition for writ of mandate on the ground that the Board did not recognize it had discretion to stay the penalty of revocation.[2]

■ We conclude that Government Code section 11517, subdivision (c)(2)(E)(ii) of the APA applies on remand and that the Board failed to allow argument as required by that statute. The Board therefore abused its discretion because it failed to proceed in the manner required by law, a ground for relief under Code of Civil Procedure section 1094.5. The trial court erred in denying the petition for writ of administrative mandate on this ground. In light of this conclusion, we do not reach Ventimiglia's alternative arguments that he was deprived of due process under the federal and state Constitutions and that the Board failed to comply with the original writ of administrative mandate.

## FACTUAL AND PROCEDURAL SUMMARY

Ventimiglia had practiced as a licensed marriage and family therapist since 1986. In 1999, he began a sexual relationship with a patient, S.D., which lasted until August 2001. During this time he continued to treat S.D. His attempt to end the relationship in 2001 led to an altercation in which Ventimiglia attempted to physically remove S.D. from his office, and police were called. S.D. reported their relationship to the Board.

In April 2003, the Board filed an accusation against Ventimiglia based on his sexual relationship with S.D. At a hearing before an administrative law judge, Ventimiglia stipulated that the following portion of the accusation was true and that no proof would be required: "From on or about August 1999, until on or about August 17, 2001, [Ventimiglia] rendered therapy to [S.D.].

---

[1] Statutory references are to the Government Code unless otherwise indicated.

[2] *Board of Behavioral Sciences v. Ventimiglia* (Jan. 18, 2007, B186040) (nonpub. opn.) (*Ventimiglia I*).

Initially, the sessions were three times a week, later the sessions increased to five or six times a week. [Ventimiglia] failed to establish reasonable boundaries with [S.D.] in that the sessions became more personal, including physical contact. [Ventimiglia] improperly engaged in a dual relationship with [S.D.], which included a sexual relationship. [Ventimiglia] knew or should have known that his patient was in an emotional and vulnerable position. [Ventimiglia] failed to maintain professional goals, boundaries and appropriate behavior in a counseling relationship."

The administrative law judge issued a proposed decision recommending revocation of Ventimiglia's license. He found: "[Ventimiglia] presented a substantial amount of evidence regarding the background of his therapeutic and sexual relationship with [S.D.], his realization of the consequences of his conduct, psychological factors which drove him to violate the boundaries between himself and his patient, and his rehabilitation therefrom. The evidence was impressive, credible, and of such significance that, but for the law which mandates revocation of his license, might otherwise have led to a disciplinary order less stringent than that set forth below." In a footnote, the administrative law judge noted that it was not necessary to detail evidence of Ventimiglia's efforts at rehabilitation since revocation of his license was mandatory.

Ventimiglia was found to have violated Business and Professions Code section 729, which bars therapists and other medical providers from engaging in sexual contact with a patient or client. The administrative law judge cited Business and Professions Code former section 4986.71 in concluding that revocation of Ventimiglia's license was mandatory.

The Board deleted the administrative law judge's footnote stating that Ventimiglia's rehabilitation need not be discussed because revocation was mandatory. As so amended, the Board adopted the proposed decision as its decision. Ventimiglia brought a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. (*Ventimiglia v. Board of Behavioral Sciences* (Super. Ct. L.A. County, 2005, No. BS094183).) He argued the Board had the discretion to issue a lesser penalty and that the Board had failed to recognize and exercise that discretion.

The trial court ruled in favor of Ventimiglia, concluding that the Board had abused its discretion by not proceeding in the manner required by law.[3] Based

[3] Pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of the record on the Board's appeal from the court's order on Ventimiglia's first petition for writ of administrative mandate. (*Ventimiglia I, supra,* B186040.)

on the relevant legislative history, the trial court concluded that Business and Professions Code former section 4982.26 gave the Board discretion to stay the revocation. The trial court concluded: "Here, the Board's decision to revoke [Ventimiglia's] license was based on the erroneous interpretation of § 4982.26 that it had no discretion other than to revoke the license. As such, the decision was an abuse of discretion in that the Board, in effect, exercised no discretion in setting the penalty." The trial court issued a peremptory writ of mandate directing the Board to set aside its decision revoking Ventimiglia's license and remanding the matter "to redetermine the penalty to be imposed upon [Ventimiglia] in light of [the trial court's] Statement of Decision, and to take any further action specially enjoined on you by law."

On remand after we affirmed the trial court in *Ventimiglia I*, the Board issued a new decision with extensive new findings of fact. In 18 new paragraphs, the Board detailed the progression of the sexual relationship between Ventimiglia and S.D.; Ventimiglia's failure to maintain professional boundaries; his failure to insist that she consult with other therapists; and his failure to insist that she have a psychiatric/medication evaluation in light of S.D.'s suicide threats. The Board found that Ventimiglia waited nearly six months to seek professional help after the relationship with S.D. ended in 2001. Although S.D. was being treated by other professionals, Ventimiglia returned her telephone calls, even after the Board's accusation was filed against him, conduct severely criticized by the Board.

The Board found that Ventimiglia failed to demonstrate remorse, and that he was focused on the consequences of his behavior rather than "an internal, moral and ethical sense it was *wrong*." Ventimiglia was found to have frequently blamed other people and circumstances rather than focusing on his own conduct. The Board found that his claim that he was not trained or educated in the nature of S.D.'s condition (borderline personality disorder) was contradicted by the evidence. In detailed findings, the Board found Ventimiglia's expert witnesses were neither independent, unbiased nor credible.

In its conclusion of law, the Board found that Ventimiglia engaged in repeated acts of sexual contact with a patient, within the meaning of Business and Professions Code former section 4986.71, which provided for revocation of the license of a therapist who had engaged in sexual contact. The Board determined that mitigation of the penalty of revocation was not warranted under the criteria found in California Code of Regulations, title 16, section

1814. The Board concluded: "The nature and severity of [Ventimiglia's] acts speak for [themselves]. Having sexual relations with a patient is one of the most severe offenses a Marriage and Family Therapist can commit. In addition, [Ventimiglia] did so under circumstances that aggravated rather than mitigated the nature of this offense. He engaged in sexual relations with a patient he knew to be a borderline unstable individual. He did not just do so one or two times as a result of a 'moment of weakness,' but continually and systematically over a 16 month period. Even at the end, he was operating under the assumption he could still 'cure' the patient with continued therapy."

The Board concluded that Ventimiglia's efforts at rehabilitation had been "minimal and clearly do not justify his being permitted to practice as a Marriage and Family Therapist even under limited or restricted conditions." Ventimiglia's license was revoked. He obtained a temporary stay of the revocation order from the superior court, conditioned on notice to his existing clients of the pending disciplinary action.

Ventimiglia then brought a second petition for peremptory writ of mandamus under Code of Civil Procedure section 1094.5. (*Ventimiglia v. Board of Behavioral Sciences* (Super. Ct. L.A. County, 2007, No. BS109787).) He argued that on remand, the Board in effect rejected the administrative law judge's proposed decision and issued its own, materially different decision. Ventimiglia contended that in such circumstances, the APA, Government Code section 11517, subdivision (c)(2)(E)(ii), requires that the affected party be given an opportunity to present either oral or written argument before the agency itself. He was not given that opportunity. He contended that the Board therefore failed to proceed in the manner required by law.

The Board opposed the petition for writ, arguing that the procedure invoked by Ventimiglia does not apply in cases remanded by the Court of Appeal. It also argued that the revocation was reasonable and consistent with its policy to protect the public as mandated by Business and Professions Code former section 4990.125 in light of the severity of Ventimiglia's misconduct.[4]

The trial court adopted its tentative decision as its statement of decision and denied the writ. It held that the procedure under section 11517, subdivision (c)(2)(E) is inapplicable here because "[t]he Board's decision

---

[4] Business and Professions Code former section 4990.125, also cited by the Board on appeal, was repealed by Statutes 2006, chapter 659, section 22. It was reenacted without substantive change in the same legislation as Business and Professions Code section 4990.16: "Protection of the public shall be the highest priority for the board in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (Added by Stats. 2006, ch. 659, § 21.)

herein was not a nonadoption or rejection of a proposed decision of an ALJ [administrative law judge], but a decision made in response to a writ of mandate issued by this Court." The trial court concluded that the Board "did just what the Court commanded it to do. It evaluated all the evidence in the record and issued a new decision, this time in the exercise of its discretion, imposing the penalty of revocation." The court found no abuse of the Board's discretion on remand. Ventimiglia filed a timely appeal from this order.

## DISCUSSION

Appellate review is de novo when the trial court decision is based on interpretation of a statute. (*Poliak v. Board of Psychology* (1997) 55 Cal.App.4th 342, 348 [63 Cal.Rptr.2d 866].) The statutory question presented here is whether section 11517, subdivision (c)(2)(E)(ii) applies to require that a licensee be given an opportunity to present oral or written argument to the Board when a court has granted an administrative writ of mandate and remanded the matter to the Board for reconsideration of penalty under the circumstances presented here. Ventimiglia argues that the Board failed to act in the manner required by law because he was not afforded this opportunity. The Board takes the position that following remand, it must comply only with the administrative writ of mandate and that the APA no longer applies.

### A. *The Statutory Scheme*

■ Sexual contact by a licensed marriage and family therapist with a patient is misconduct punishable by revocation of his or her license. (Bus. & Prof. Code, § 729, subd. (a).) License revocation proceedings under Business and Professions Code section 4982.26 must be held in accordance with the APA. (Bus. & Prof. Code, § 4982.3.) Under the APA, license revocation proceedings are initiated by the filing and serving of an accusation. (§§ 11503, 11505.) If the matter becomes a contested case because the licensee has filed a notice of defense, a hearing on the merits is conducted by an administrative law judge. (§§ 11502, 11506, subd. (c), 11512.)

When the administrative law judge hears the contested case alone, he or she must deliver a proposed decision to the relevant agency, here the Board. (§ 11517, subd. (c).) If the Board fails to take action within 100 days of receipt of the proposed decision, it is deemed adopted as the final decision of the Board. (§ 11517, subd. (c)(2).) Upon receipt of the proposed decision, the Board has several alternative courses of action available. It may (A) adopt the proposed decision in its entirety; (B) reduce or otherwise mitigate the

proposed penalty and adopt the balance of the proposed decision; (C) make technical or other minor changes in the proposed decision and adopt it as the decision; (D) reject the proposed decision and refer the case to the same administrative law judge if reasonably available; or (E) "[r]eject the proposed decision, and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence." (§ 11517, subd. (c)(2).)

An action by the Board is reviewable by petition for writ of administrative mandate under Code of Civil Procedure section 1094.5. "The scope of review under [Code of Civil Procedure] section 1094.5 was laid out by the Supreme Court in *Selby Realty Co. v. City of San Buenaventura*: 'Subdivision (b) of section 1094.5 of the Code of Civil Procedure provides that the scope of inquiry in a mandamus proceeding brought to inquire into the validity of a final administrative order shall extend to whether the respondent has proceeded without or in excess of jurisdiction, whether there was a fair trial, and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the decision is not supported by the findings, or the findings are not supported by the evidence.' (10 Cal.3d [110,] 123–124 [109 Cal.Rptr. 799, 514 P.2d 111].)" (*Ocean Park Associates v. Santa Monica Rent Control Bd.* (2004) 114 Cal.App.4th 1050, 1061 [8 Cal.Rptr.3d 421].)

B. *Ventimiglia I*

In *Ventimiglia I*, we determined that the original version of Business and Professions Code section 4982.26, enacted in 1994, applies to Ventimiglia's case. It authorized the Board to revoke the license of a therapist who had engaged in sexual contact with a patient. The issue in *Ventimiglia I* was whether the Board had the discretion under Business and Professions Code former section 4982.26 to stay revocation of Ventimiglia's license.

We concluded that the Board had discretion to stay revocation and that it had not exercised that discretion in Ventimiglia's case. Our rationale was based on the legislative history of the 1994 version of the statute.[5] As originally introduced, the enacting bill did not definitively prohibit issuance

[5] As in *Ventimiglia I*, the Board does not assert that the 2006 version of Business and Professions Code section 4982.26 applies here. The 2006 amendment, presently in effect, expressly directs the Board to revoke a license upon a finding that the licensee engaged in sexual contact with a patient.

of a stay by either the administrative law judge or the Board. Assembly amendments to the legislation attempted to clarify the law by expressly withholding that power from both the administrative law judge and the Board.[6] But the third and final version of the bill deleted the language making the decision of the administrative law judge immediately final and not subject to vote by the Board. (Sen. Bill No. 2039 (1993–1994 Reg. Sess.) § 32, as amended Aug. 25, 1994.) The analysis prepared for the Assembly Committee on Health explained that this version of Business and Professions Code section 4982.26 prohibited the *administrative law judge* from staying the license revocation, but was silent as to the powers of the Board to issue a stay. (Assem. Com. on Health, Rep. on Sen. Bill No. 2039 (1993–1994 Reg. Sess.) § 32, as amended Aug. 25, 1994, p. 1.) The analysis prepared by the Senate Rules Committee echoed this interpretation. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2039 (1993–1994 Reg. Sess.) as amended Aug. 25, 1994, p. 1.)

In *Ventimiglia I,* we found an indication of the reason that the legislation was amended to bar only the administrative law judges from issuing a stay. We quoted a lengthy analysis of the second version of the bill prepared by the Department of Consumer Affairs. That analysis noted that the second version of the bill would have deprived the Board of "the discretion to consider each case of sexual misconduct on its individual merits." (Dept. of Consumer Affairs, Analysis of Sen. Bill No. 2039 (1993–1994 Reg. Sess.) May 24, 1994, as amended Apr. 5, 1994, p. 5.) Since the Legislature chose to delete the language prohibiting the Board from exercising its discretion to grant a stay of a license revocation for sexual misconduct, we concluded: "[T]here was no language in the final draft to suggest the Legislature intended to curtail the discretion normally afforded [the Board] to reduce the proposed penalty, stay the proposed penalty, or grant probation to an offender in the presence of mitigating circumstances (see Gov. Code, §§ 11517, subd. (c)(2)(B), 11519, subd. (b); Cal. Code Regs., tit. 16, §§ 1814, 1888). The final version precluded only 'administrative law judge[s]' from issuing stays." (*Ventimiglia I, supra,* B186040.)

We concluded in *Ventimiglia I:* "In sum, the Legislature had an opportunity in 1994 to pass a version of section 4982.26 that specifically forbade [the Board] from intervening in license revocation proceedings where the licensee

---

[6] As amended, Business and Professions Code section 4982.26 would have provided: "Notwithstanding Section 4982, any proposed decision or decision issued under this chapter in accordance [with the applicable administrative procedures] that contains any finding of fact that the licensee or registrant engaged in any act of sexual abuse of, or sexual relations with, a patient, shall contain an order of revocation. *The revocation shall not be stayed by the administrative law judge, and the decision shall be final, immediate, and not subject to a vote by the board.*" (Legis. Counsel's Dig., Sen. Bill No. 2039 (1993–1994 Reg. Sess.) as amended June 30, 1994, italics added.)

engaged in sexual contact with a patient or former patient. Instead, it deleted the language that would have accomplished that objective and enacted legislation that placed curbs on [administrative law judges] only. Until passage of the 2006 version of section 4982.26, the [Board] retained discretion to stay the revocation order contained in an [administrative law judge's] decision. The trial court correctly ruled that [the Board] abused its discretion by failing to consider the mitigating factors introduced by respondent." (*Ventimiglia I, supra,* B186040.)

### C. *Applicability of Section 11517, subdivision (c)(2)(E)(ii)*

■ "An established rule of statutory construction requires us to construe statutes to avoid 'constitutional infirmit[ies].' [Citations.]" (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 846–847 [123 Cal.Rptr.2d 40, 50 P.3d 751].) "As a prudential matter, we routinely decline to address constitutional questions when it is unnecessary to reach them." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17, fn. 13 [50 Cal.Rptr.3d 585, 145 P.3d 462].) Ventimiglia argues that the Board did not proceed in the manner required by section 11517 of the APA. In conformity with the applicable appellate principles, we begin our analysis with the statutory argument.

This case arises in an unusual procedural posture. In its original decision, the Board acted under section 11517, subdivision (c)(2)(C) and made only technical or minor changes in the administrative law judge's proposed decision, and adopted it as modified. At that point, Ventimiglia was not entitled to any further right to be heard under section 11517. But on remand, the Board took a different course. Section 11517, subdivision (c)(2)(C) expressly declares: "Action by the agency under this paragraph is limited to a clarifying change or a change of a similar nature that does not affect the factual or legal basis of the proposed decision." As we explain, we agree with Ventimiglia that on remand, the Board went beyond the clarifying changes allowed under this subparagraph, rejected the decision of the administrative law judge, and decided the case itself. This procedure is permissible only under subdivision (c)(2)(E) of section 11517.[7] Once the Board determined that it would reject the proposed decision of the administrative law judge,

---

[7] That subdivision provides: "Within 100 days of receipt by the agency of the administrative law judge's proposed decision, the agency may . . . . [¶] . . . [¶] (E) Reject the proposed decision, and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence. . . . If the agency acts pursuant to this subparagraph, all of the following provisions apply: [¶] . . . [¶] (ii) The agency itself shall not decide any case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself, no agency member may vote unless the member heard the additional oral evidence."

subdivision (c)(2)(E)(ii) of section 11517 mandated further procedural safeguards. Only one of these is pertinent here: "(ii) The agency itself shall not decide any case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. . . ." (§ 11517, subd. (c)(2)(E).)

After the remittitur was issued in *Ventimiglia I*, the Board issued a decision with extensive findings of fact and conclusions of law, which were at odds with the original proposed decision of the administrative law judge. As we have discussed, the administrative law judge found Ventimiglia had presented substantial evidence of the circumstances surrounding the sexual relationship with S.D. and his rehabilitation. The proposed decision stated: "The evidence was impressive, credible, and of such significance that, but for the law which mandates revocation of his license, might otherwise have led to a disciplinary order less stringent than that set forth below." The administrative law judge noted that it was not necessary to detail evidence of Ventimiglia's efforts at rehabilitation since (as he understood the law) revocation of his license was mandatory.

Contrary to this finding by the administrative law judge, on remand, the Board issued a 15-page decision with detailed new factual findings and conclusions of law. In contrast, the proposed decision by the administrative law judge was just four pages long. The Board concluded: "The nature and severity of [Ventimiglia's] acts speak for [themselves]. Having sexual relations with a patient is one of the most severe offenses a Marriage and Family Therapist can commit. In addition, [Ventimiglia] did so under circumstances that aggravated rather than mitigated the nature of this offense. He engaged in sexual relations with a patient he knew to be a borderline unstable individual. He did not just do so one or two times as a result of a 'moment of weakness,' but continually and systematically over a 16 month period. Even at the end, he was operating under the assumption he could still 'cure' the patient with continued therapy." In detailed findings, the Board found Ventimiglia's expert witnesses were neither independent, unbiased nor credible. The Board concluded that Ventimiglia's efforts at rehabilitation had been "minimal and clearly do not justify his being permitted to practice as a Marriage and Family Therapist even under limited or restricted conditions."

The Board's new findings and conclusions went far beyond the clarifying modifications allowed under section 11517, subdivision (c)(2)(C). The new language in the Board's decision affected the factual and legal basis of the proposed decision, particularly because Ventimiglia's efforts at rehabilitation were addressed at length, a subject not reached by the administrative law judge in the proposed decision because of his belief that revocation was mandatory.

The APA is silent as to whether the procedural safeguards codified in section 11517 apply on remand following judicial review by petition for writ of administrative mandamus. " 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) . . .' If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, '[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [Citation.]' . . . If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy. [Citation.]" (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125–1126 [77 Cal.Rptr.3d 569, 184 P.3d 702].) "We do not construe statutory language in isolation, but rather as a thread in the fabric of the entire statutory scheme of which it is a part." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* 40 Cal.4th 1, 11.)

Ventimiglia never had an opportunity to provide either oral or written argument to the Board addressing these new findings and conclusions of law. This was inconsistent with the safeguards of the APA as the legislative history demonstrates. In 1943, the Legislature directed the Judicial Council to investigate administrative procedure and judicial review of administrative determinations. (See *Hohreiter v. Garrison* (1947) 81 Cal.App.2d 384 [184 P.2d 323] (*Hohreiter*) for extensive discussion of the Judicial Council report.) The result of the Judicial Council's work was the Legislature's adoption of the APA in 1945. (Stats. 1945, chs. 867–902, p. 1626.) Subdivision (c) of section 11517 set the procedure to be followed if an agency chose not to adopt the proposed decision of the hearing officer who conducted the hearing. The essential language at issue in our case was included in the original statute: " 'The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself.' " (*Hohreiter, supra,* 81 Cal.App.2d at p. 395.)

The *Hohreiter* court examined the intent of the Judicial Council and the Legislature in enacting this procedure: "[T]here can be no reasonable doubt that the council intended and the Legislature provided that, where the hearing officer alone hears the case, the agency has the power of adjudicating, . . . but, if not satisfied [with the proposed decision of the hearing officer], *before a contrary decision may be rendered, it must give the parties a chance to*

*argue and must read the record."* (*Hohreiter, supra,* 81 Cal.App.2d at pp. 395–396, italics added.) The Court of Appeal reiterated: "If the agency does not so adopt the proposed decision, it must furnish the parties with copies of the proposed decision and must allow them to argue either orally or by brief. It may then decide the case itself on the basis of the record before the hearing officer and the arguments." (*Id.* at p. 396.) The court cited the report of the Judicial Council, which stated: " 'The result of the Council proposal is that, in fact, the decision is made in every case by someone familiar with the proceedings and *before whom an opportunity to argue the case is afforded*: the hearing officer if his decision is adopted; the agency itself if it does not adopt the proposed decision.' " (*Id.* at p. 397, quoting Tenth Rep. of the Judicial Council of Cal. (Dec. 31, 1944) p. 24, italics added.)[8]

■ The court concluded that under section 11517, where the hearing officer acts alone, the agency may adopt his or her decision without reading or otherwise familiarizing itself with the record. (*Hohreiter, supra,* 81 Cal.App.2d at p. 398.) It rejected the appellant's argument that this procedure was unconstitutional under *Morgan v. United States* (1936) 298 U.S. 468 [80 L.Ed. 1288, 56 S.Ct. 906] which involved review of an order by the United States Secretary of Agriculture fixing maximum rates for buying and selling livestock. It was alleged in *Morgan* that the secretary had assigned the hearing to two acting secretaries, and then made his order fixing rates without having heard or read any of the evidence. The Supreme Court held that this procedure did not allow the plaintiffs the hearing required by the applicable statute: "If the one who determines the facts which underlie the order has not considered evidence *or argument*, it is manifest that the hearing has not been given." (*Morgan, supra,* at pp. 480–481, italics added.) The Supreme Court stated its famous aphorism: " 'The one who decides must hear.' " (*Hohreiter, supra,* at p. 400, see also *Morgan v. United States* (1938) 304 U.S. 1 [82 L.Ed. 1129, 58 S.Ct. 773, 58 S.Ct. 999].)

■ The *Hohreiter* court distinguished the two *Morgan* cases: "[T]hey cannot be interpreted to mean that, where a fair trial is required by the statute before a fair and impartial hearing officer who is required by the statute to weigh and appraise the evidence and to prepare a proposed decision, the

---

[8] The report by the Legislative Counsel on Senate Bill No. 705, section 11517 is consistent with this interpretation: "<u>Decision</u> of hearing officer may be sustained or penalty reduced. If decision not sustained, agency may decide case from record or rerefer to same or different hearing officer. *No case shall be decided by agency without opportunity to parties to present oral or written argument.* (Gov. C. 11517.)" (Legis. Counsel, Rep. on Sen. Bill No. 705 (1945 Reg. Sess.) p. 4, italics added.)

Legislature cannot provide that the administrative agency may adopt his proposed decision without reading the record. *What the Supreme Court was interested in in those cases was in seeing to it that the administrative agency gave those adversely affected the right to a full and fair hearing.* . . . Due process requires a fair trial before an impartial tribunal, and that requires that the person or body who decides the case must know the evidence, but due process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded." (*Hohreiter, supra,* 81 Cal.App.2d at p. 401, italics added.)

In *Hohreiter,* the Court of Appeal observed that the California Supreme Court had recently upheld the identical procedure for adopting the proposed decision of a hearing officer for the Industrial Accident Commission and concluded that there was nothing inconsistent with the doctrine that " ' "he who decides must hear," announced in *Morgan* v. *United States.*' " (*Hohreiter, supra,* 81 Cal.App.2d at p. 401, quoting *Cal. Shipbuilding Corp. v. Ind. Acc. Com.* (1946) 27 Cal.2d 536, 544 [165 P.2d 669].)

"In 1987, the Legislature directed the California Law Revision Commission (Commission) to study administrative adjudication and propose reforms to the APA. (Sen. Conc. Res. No. 12, Stats. 1987 (1987–1988 Reg. Sess.) res. ch. 47, par. 24, p. 5899; see Recommendation [Administrative Adjudication by State Agencies (Jan. 1995)] 25 Cal. Law Revision Com. Rep. [(1995)] [55,] 75; [*The Fiftieth Anniversary of the Administrative Procedure Act: Past and Prologue: The Influence of the Federal Administrative Procedure Act on California's New Administrative Procedure Act* (1996)] 32 Tulsa L.J. [297,] 299, fn. 11.) After seven years, the Commission came back with extensive recommendations. It declared: 'Fundamental fairness in decisionmaking demands both that factual inputs and arguments to the decisionmaker on law and policy be made openly and *be subject to argument by all parties.*' (Recommendation, 25 Cal. Law Revision Com. Rep., *supra,* at p. 105.)" (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* 40 Cal.4th 1, 8–9, italics added, fn. omitted.)

In *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd., supra,* 40 Cal.4th 1, the Supreme Court rejected a procedure employed by the Department of Alcoholic Beverage Control, which allowed ex parte contacts between the department's prosecutor and the ultimate decision maker about the substance of a case before a final decision is rendered. The court held: "One fairness principle directs that in adjudicative

matters, one adversary should not be permitted to bend the ear of the ultimate decision maker or the decision maker's advisers in private." (*Id.* at p. 5.) It concluded that the APA, as revised in 1995, adopted this and other precepts of fairness. (40 Cal.4th at p. 5.) The Supreme Court explained: "The APA's administrative adjudication bill of rights was designed to eliminate such one-sided occurrences." (*Id.* at p. 17.)

Section 11425.10 codifies the administrative adjudication bill of rights cited by the Supreme Court in *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 40 Cal.4th 1. Subdivision (a) provides: "The governing procedure by which an agency conducts an adjudicative proceeding is subject to all of the following requirements: [¶] (1) The agency shall give the person to which the agency action is directed notice and an opportunity to be heard, including the opportunity to present and rebut evidence."

In its 1995 recommendations, the Law Revision Commission repeatedly stressed that one of the purposes of its proposed revisions to the APA was to "[i]mprove fairness of state agency hearing procedures" and to provide fundamental due process. (Recommendation: Administrative Adjudication by State Agencies (Jan. 1995) 25 Cal. Law Revision Com. Rep., *supra*, pp. 55, 69–70, 81, 98–99; hereafter Recommendation.) Under the version of section 11517 proposed by the Recommendation, if the agency did not adopt a proposed decision by the administrative law judge, "[t]he agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself." (Recommendation, *supra*, at p. 245.)

The Legislature adopted the Law Revision Commission's recommended revisions to the APA in Senate Bill No. 523 (1995–1996 Reg. Sess.). (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 40 Cal.4th at p. 9.) In that bill, section 11517 includes the language prohibiting an agency from rejecting the decision of an administrative law judge and deciding the case itself without affording the parties an opportunity to present argument orally or in writing. (Stats. 1995, ch. 938, § 42, p. 7163.)[9] As we have seen, the 1999 revision to section 11517 retained

---

[9] Subdivision (c) of the 1995 version of section 11517 provided: "(c) If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, or an agreed statement of the parties, with or without taking additional evidence, or may refer the case to the same administrative law judge if reasonably available, otherwise to another administrative law judge, to take additional evidence. A copy of the record shall be made available to the parties. The agency may require payment of fees covering direct costs of making the copy. By stipulation of the parties, the agency may decide the case upon the record without including the transcript. If the case is assigned to an administrative law judge he or she shall prepare a proposed decision as provided

this requirement that parties be given an opportunity to provide written or oral argument to an agency where it rejects the administrative law judge's proposed decision and decides the case itself. (§ 11517, subd. (c)(2)(E)(ii).)

There is no language in section 11517 prohibiting its application to matters decided on remand following judicial review by writ of administrative mandate. Section 11523 is the judicial review provision of the APA: "Judicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure, subject, however, to the statutes relating to the particular agency. . . ." The remainder of that statute is concerned with the contents and preparation of the administrative record and costs. Section 11523 is silent as to the applicable procedure to be followed on remand after an administrative writ of mandate is issued. The parties do not cite, and we have not found, any statute in the Business and Professions Code which renders inapplicable the provisions of the APA on remand in a disciplinary case under Business and Professions Code section 4982.3.

### D. *Alford*

The Board relies heavily upon *Alford v. Department of Motor Vehicles* (2000) 79 Cal.App.4th 560 [94 Cal.Rptr.2d 222] (*Alford*) in arguing that section 11517, subdivision (c)(2)(E)(ii) applies only where the Board rejects a proposed decision and does not apply on remand following an order on a petition for writ of administrative mandate. The Department of Motor Vehicles revoked Alford's license because of a criminal conviction, although the administrative law judge who initially heard the matter recommended the lesser penalty of suspension. The department decided the matter itself under section 11517, subdivision (c), adopting the administrative law judge's proposed opinion except for the penalty. Alford brought a petition for administrative mandamus, which was denied.

Alford argued that if the case is heard by an administrative law judge alone, the department may not increase the penalty under section 11517. (*Alford, supra,* 79 Cal.App.4th at p. 565.) The Court of Appeal found that section 11517 unambiguously set out the options available to an agency upon receipt of a proposed decision by an administrative law judge who heard the

---

in subdivision (b) upon the additional evidence and the transcript and other papers which are part of the record of the prior hearing. A copy of the proposed decision shall be furnished to each party and his or her attorney as prescribed in subdivision (b). *The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself.* If additional oral evidence is introduced before the agency itself, no agency member may vote unless the member heard the additional oral evidence. The authority of the agency itself to decide the case under this subdivision includes authority to decide some but not all issues in the case." (Stats. 1995, ch. 938, § 42, p. 7163, italics added.)

matter alone. In that case, the agency chose to reject the proposed decision and to decide the case on its own under former section 11517, subdivision (c). (79 Cal.App.4th at p. 566.) Significantly, unlike Ventimiglia, Alford was afforded the right to present oral argument to the agency, which he did. The agency issued its decision after hearing argument. (*Ibid.*) The *Alford* court reasoned: "Former subdivision (c) merely requires that the agency follow certain procedures if the agency rejects the administrative law judge's proposed decision and decides the case itself. *One of these is 'affording the parties the opportunity to present either oral or written argument before the agency itself.'* (Gov. Code, § 11517, former subd. (c).) Once these procedures are complied with, the agency may render its decision." (*Id.* at pp. 566–567, italics added.)

The Board argues that it neither adopted nor rejected the administrative law judge's proposed decision in reaching its new decision on remand. Instead, it contends it merely complied with the language of the writ of administrative mandate. *Alford* does not address the issue presented here, whether section 11517, subdivision (c)(2)(E)(ii) applies on remand.

The legislative history of section 11517 demonstrates that from its origin in 1945, the Legislature provided that an agency may not reject a proposed decision of the administrative law judge and decide the case on its own unless the parties are given an opportunity to present argument to the agency orally or in writing. There is nothing in the APA that creates an exception to this important procedural safeguard when a case is remanded for a new decision following judicial review on a petition for writ of administrative mandamus. Were we to adopt the interpretation urged by the Board, and hold that the APA does not apply on remand, Ventimiglia would be deprived of his right to argue to the Board. This interpretation is inconsistent with the legislative history of section 11517. (See *Duarte & Witting, Inc. v. New Motor Vehicle Bd.* (2002) 104 Cal.App.4th 626, 640 [128 Cal.Rptr.2d 501] ["Government Code section 11517 continues to provide, . . . , that if a contested case is heard by a hearing officer, the hearing officer shall prepare a proposed decision for the board, and the board itself shall not decide any case without affording the parties the opportunity to present oral or written argument before the board."].) It would also raise serious constitutional issues under the *Morgan* principle. As we have discussed, that is a course we should try to avoid. Indeed, it is evident that, in enacting section 11517, subdivision (c)(2)(E)(ii), the Legislature sought to avoid constitutional issues under *Morgan*. The interpretation urged by the Board would undermine that objective.

■ California courts have expressed the need for a fair hearing by the agency on remand in administrative mandate cases. In *Sinaiko v. Superior*

*Court* (2004) 122 Cal.App.4th 1133 [19 Cal.Rptr.3d 371], the Medical Board of California disqualified all of a physician's expert witnesses, rendering his license revocation hearing unfair. The Medical Board argued that after concluding that the hearing was unfair, it was proper for the trial court to reweigh the evidence rather than remanding to the Board. The Court of Appeal disagreed. It reasoned: "[I]n those cases where the administrative agency fails to provide a fair hearing or there is a fundamental flaw in the proceedings themselves, the court should remand to the administrative agency to consider the evidence and to exercise its discretion following a full and fair hearing on the merits. This the court did not do. And because 'the broad applicability of administrative hearings to the various rights and responsibilities of citizens and businesses' has proliferated and there is an 'undeniable public interest in fair hearings in the administrative adjudication arena,' the Board, like administrative bodies throughout the state, must provide petitioner a fair hearing and then, equipped with the specialized knowledge residing in its ranks, must exercise its particular discretion. (*Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90–91 [133 Cal.Rptr.2d 234] . . . .)" (*Id.* at p. 1145.) In Ventimiglia's case, this public purpose is best served by the Board's compliance with section 11517, subdivision (c)(2)(E)(ii), which affords him an opportunity to provide written or oral argument before the Board renders its decision on remand.

This conclusion is in harmony with Code of Civil Procedure section 1094.5, subdivision (f). That provision states: "The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it . . . may order respondent to take such further action as is specially enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent." By law, the Board must act in accordance with the provisions of the APA.

Ventimiglia should have been given an opportunity to present oral or written argument to the Board before it reached its decision on remand, and the Board abused its discretion by failing to proceed in the manner required by law. His petition for writ of administrative mandate should have been granted on this ground. On remand, he is to be given that opportunity in accordance with the procedures set out in section 11517, subdivision (c)(2)(E)(ii). In light of this conclusion, we need not, and do not, reach Ventimiglia's alternative arguments based on the due process clauses of the federal and state Constitutions. For the same reason, we do not reach his argument that the Board failed to comply with the language of the original writ of administrative mandate.

## DISPOSITION

The order denying Ventimiglia's petition for writ of administrative mandate is reversed. He is to have his costs on appeal.

Manella, J., and Suzukawa, J., concurred.